654 January 15, 2015 No. 2

IN THE SUPREME COURT OF THE
STATE OF OREGON

FELIPE PEREIDA-ALBA,
*Respondent on Review,*

*v.*

Rick COURSEY,
Superintendent,
Eastern Oregon Correctional Institution,
*Petitioner on Review.*

(CC CV090464; CA A146174; SC S060846)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 16, 2013.

Erin C. Lagesen, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Rankin Johnson IV, Portland, argued the cause and filed the brief for respondent on review.

KISTLER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Walters, J., concurred in the judgment and filed an opinion.

Baldwin, J., dissented and filed an opinion.

_____
* Appeal from Umatilla County Circuit Court, James R. Hargreaves, Judge. 252 Or App 66, 284 P3d 1280 (2012).

**KISTLER, J.**

Petitioner was convicted of first-degree robbery. After pursuing a direct appeal, he filed a petition for post-conviction relief, alleging that his trial counsel's performance had fallen below the minimum level of representation that the state and federal constitutions require. Among other things, petitioner claimed that his trial counsel was constitutionally inadequate for failing to ask for an instruction on the lesser-included offense of third-degree robbery. Essentially, he argued that his trial counsel either did not decide or reasonably could not have decided to forego giving the jury the option of convicting him of the lesser-included offense of third-degree robbery. The post-conviction court ruled that no reasonable counsel would have failed to ask for an instruction on that lesser-included offense and entered judgment in petitioner's favor.

The Court of Appeals affirmed the post-conviction court's judgment but on a different ground. *Pereida-Alba v. Coursey*, 252 Or App 66, 284 P3d 1280 (2012). It reasoned that the post-conviction court could have found that petitioner's counsel inadvertently failed to ask for a lesser-included instruction. *Id.* at 71. The Court of Appeals concluded that the failure to make a conscious decision regarding that issue was sufficient, without more, to establish constitutionally inadequate assistance. *Id.* We allowed the state's petition for review to consider this recurring issue. We now reverse the Court of Appeals decision and the post-conviction court's judgment and remand this case to the circuit court for further proceedings.[1]

The evidence at petitioner's post-conviction trial consisted of the transcript of his criminal trial, some entries from the trial court record, and the briefs that the parties had filed on direct appeal. We take the following facts from the transcript of the criminal trial. One day, petitioner went into a Shop'N Kart in Woodburn, Oregon. He was wearing a backpack with a "bright yellow Tweety Bird on it," and

---

[1] The defendant in this post-conviction proceeding is the superintendent of the Eastern Oregon Correctional Institution. We refer to the superintendent as "the state" to avoid confusion with the defendant and defense counsel in the underlying criminal trial.

the store's security guard kept an eye on petitioner because he was concerned that petitioner would take food from the store and put it into his backpack. The guard saw petitioner take two packages of Twinkies and a carton of flavored milk, crouch behind one of the shelves, put the flavored milk and Twinkies into his backpack, and leave the store without paying. The guard pursued petitioner, identified himself as a security guard, and showed petitioner a badge. Because the guard did not speak Spanish and petitioner did not speak English, a store employee went with the security guard and translated.

When the guard confronted petitioner, petitioner initially "started backing up with his hands up." Then, he "turned around and took off running." The guard caught up with petitioner, "took him to the ground[,] and put him in a headlock and a wristlock to put him in a submission [hold]." The guard told petitioner "don't run, stop resisting" and asked petitioner, through the store employee, if he was going to cooperate. When petitioner said that he would, the guard let petitioner up but kept him "in a wristlock and headlock because [the guard] did not want [petitioner] running from [him]." When asked whether petitioner had "attempt[ed] to pull away" as he walked petitioner back into the store, the guard answered, "He was still struggling with me, but once we got into the building he stopped the struggling."

Once in the building, the guard took petitioner upstairs to the office where petitioner sat in a chair holding his backpack. What happened next was disputed. The security guard testified that he tried to get hold of the backpack but that petitioner initially hugged the backpack to his chest. The guard testified that, when he attempted to get hold of the backpack a second time, petitioner "ripped" the backpack open, pulled out a gun, and pointed it directly at the guard for several seconds. According to the guard, petitioner was "holding [the gun] with his right hand, his hands [were] around the stock of the gun and his finger's on the trigger, and it's pointed right at me." At that point, the guard told petitioner to leave, which he did.

The store employee, who spoke Spanish and thus understood what petitioner had said, offered a different

perspective. He testified that, when the guard was trying to grab petitioner's backpack, petitioner said in Spanish, "[D]o you really want to see what I have, do you really want to see," as if petitioner were asking a question. As the security guard got closer, petitioner pulled the handgun out, pointed it for a second at the guard, and then pointed it at the ceiling. Petitioner "looked towards [the store employee] and he said he didn't want to do anything, pretty much saying he didn't want to harm anybody."

Petitioner's testimony essentially tracked the store employee's. He testified that, when the guard asked to see what was in his backpack, "he didn't want to show it to them because he knew there was a weapon in there." However, the guard "kept insisting that [petitioner] should take things out" of the backpack. So, he did. Petitioner testified that he took the gun out but did not point it at the guard. The guard, however, "got scared and [he] told [him] to leave." When asked why he left the store, petitioner replied, "They told me to leave."

Several days later, two officers saw petitioner wearing his backpack. They arrested him, and the state charged him with first-degree robbery. The indictment alleged:

> "[Petitioner] *** did unlawfully and knowingly while in the course of committing theft, with the intent of preventing and overcoming resistance to [his] taking of property and retention of the property after the taking, use and threaten the immediate use of physical force upon [the security guard] and use a dangerous weapon. The State further alleges [that petitioner] used or threatened the immediate use of a firearm."

At the trial on that charge, the parties' closing arguments focused on whether petitioner had used or threatened the use of a firearm with the intent of retaining the Twinkies and flavored milk. Relying on the security guard's testimony, the state argued that, when petitioner took the gun out of the backpack and pointed it at the guard, he had threatened the use of a firearm with the intent of retaining the stolen property. That was the point, the state argued, at which the robbery occurred.

Defense counsel responded that there were two versions of the events: the security guard's and petitioner's. She acknowledged that petitioner had taken a gun out of his backpack but explained that, as petitioner testified, he had done so because the guard had insisted that he empty his backpack. She explained that the store employee's testimony corroborated petitioner's version of the events, and she reminded the jury that the store employee was the only person other than petitioner who understood what petitioner had said that day. Beyond that, she argued that, as a practical matter, no one would use deadly force to retain two packages of Twinkies and a carton of milk. In concluding, she acknowledged that petitioner had committed theft, but she argued that "we're not talking about a Theft II here; we're talking about a [R]obbery I, and that is a huge difference." She told the jurors that, when they considered the store employee's testimony, "you will find that in fact [petitioner] is not guilty of robbery in the first degree."

The trial court instructed the jury that:

"Oregon law provides that a person commits the crime of robbery in the first degree if, in the course of committing or attempting to commit theft, the person uses or threatens the immediate use of physical force upon another person with the intent of preventing or overcoming resistance to his taking of the property or retention of the property immediately after the taking, and he uses or attempts to use a dangerous weapon."

Because first-degree robbery consists of third-degree robbery plus the use or attempted use of a dangerous weapon, ORS 164.415(1)(b),[2] the trial court's instructions on first-degree robbery necessarily included the elements of third-degree robbery. *See* ORS 164.395(1)(b).[3] Third-degree robbery, in

---

[2] ORS 164.415(1)(b) provides that "[a] person commits the crime of robbery in the first degree if the person violates ORS 164.395 [defining third-degree robbery] and the person * * * uses or attempts to use a dangerous weapon."

[3] ORS 164.395 provides that a person commits third-degree robbery:

"if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of: [p]reventing or overcoming resistance to the taking of property or to retention thereof immediately after the taking."

turn, includes the crime of theft or attempted theft, *see id.*, and the trial court instructed the jury on the elements of theft in the course of defining what the state had to prove to establish first-degree robbery.

Defense counsel did not ask that the jury be instructed separately on either third-degree robbery or theft as lesser-included offenses, which would have permitted the jury to convict him of one or both those offenses. Rather, the instructions left it to the jury to decide whether petitioner was guilty of first-degree robbery or nothing. After considering the evidence, the jury found petitioner guilty of first-degree robbery.

As noted, petitioner filed a petition for post-conviction relief, alleging that his trial counsel had provided constitutionally inadequate assistance in failing to request an instruction on the lesser-included offense of third-degree robbery. (Petitioner did not allege that his trial counsel had been inadequate in failing to ask for an instruction on the lesser-included offense of theft.) The state countered that, given the store employee's favorable testimony, petitioner's trial counsel reasonably could have made a tactical choice to limit the jury's options to convicting petitioner of first-degree robbery or acquitting him. In the state's view, the evidence that petitioner had used a gun to retain the Twinkies and flavored milk was weak, which made it reasonable to put the jury to the choice of convicting petitioner of first-degree robbery or nothing.

The post-conviction court ruled that, when the state claims that a petitioner's trial counsel made a reasonable tactical choice, "the petitioner has the burden of proving that no reasonably qualified defense attorney would have made the choice complained about in the post conviction proceeding." Applying that standard, the court held that, "[s]hort of evidence that the petitioner in this case instructed the trial attorney to take an 'all or nothing' approach as she did (and there is no such evidence) I simply cannot imagine why defense counsel would not have at least asked for at least a Robbery III [instruction]." Having concluded that no reasonable defense attorney would have failed to ask for that

instruction, the court granted petitioner post-conviction relief.[4]

The Court of Appeals affirmed but on a different ground. It observed that the mandatory minimum sentence for first-degree robbery is 90 months while the guidelines sentence for third-degree robbery ranges from probation to 16 months. *Pereida-Alba*, 252 Or App at 71. Explaining that the evidence permitted petitioner to argue that he had committed third-degree robbery but not first-degree robbery,[5] the court reasoned:

> "The upshot is that there was no evident downside to petitioner from requesting an instruction on third-degree robbery and a significant potential benefit to him from doing so."

*Id.* The Court of Appeals concluded that, given its assessment of the potential risks and benefits, "the post-conviction court reasonably could [and implicitly did] infer that the defense attorney's failure to request an instruction on third-degree robbery was attributable to the attorney's failure to consider whether to make such a request." *Id.* The court also concluded, without explanation, that the failure to consider whether to ask for an instruction on third-degree robbery established inadequate assistance. *Id.* Finally, the Court of Appeals concluded that trial counsel's omission prejudiced petitioner because "the jury did not have a complete statement of the law." *Id.* at 72.

Under Oregon law, a petitioner claiming inadequate assistance of counsel must prove that his or her trial counsel failed to exercise reasonable professional skill and judgment and that, because of that failure, the petitioner

---

[4] The petition for post-conviction relief contained multiple claims for relief, one of which alleged several specifications of inadequate assistance of counsel. The post-conviction court rejected petitioner's claims and all his specifications of inadequate assistance except for the specification discussed above. Based on its ruling on that single specification, the court granted the petition for post-conviction relief.

[5] The Court of Appeals reasoned that the security guard's statement that petitioner had struggled as the guard took him back into the store was both sufficient to permit the jury to convict him of third-degree robbery and sufficiently separate from any later use of the gun to permit defense counsel to argue that the jury could find petitioner guilty of third-degree robbery but not guilty of first-degree robbery.

suffered prejudice. *Gable v. State of Oregon*, 353 Or 750, 758, 305 P3d 85, *cert den,* 134 S Ct 651 (2013). Similarly, under federal law, a petitioner must establish that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). In this case, petitioner contends that his counsel's performance was deficient because she either did not make a conscious choice to forego asking for an instruction on third-degree robbery or, if she made that choice, no reasonable counsel would have done so.

This court has recognized that lawyers often face competing choices in deciding how to investigate and try their cases. *See, e.g.*, *Montez v. Czerniak*, 355 Or 1, 7, 322 P3d 487 (2014); *Stevens v. State of Oregon*, 322 Or 101, 109, 902 P2d 1137 (1995). We have been careful not to second-guess a lawyer's tactical decisions with the benefit of hindsight; rather, we have asked whether those decisions reflected, at the time they were made, a reasonable exercise of professional skill and judgment. *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981); *Stevens*, 322 Or at 108.

In a post-conviction proceeding, the petitioner has the burden of proving both elements of an inadequate assistance claim: (1) the failure to exercise reasonable professional skill and (2) prejudice. ORS 138.620(2); *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). When, as in this case, the state argues that the petitioner's trial counsel made a reasonable tactical choice, that argument does not shift the burden of production and proof; rather, as petitioner acknowledges, the burden of production and proof remains with him.

With those principles in mind, we turn to the arguments that petitioner raises on review. Petitioner's initial argument tracks the Court of Appeals' reasoning. He contends that, because no reasonable counsel would have failed to ask for an instruction on the lesser-included charge of third-degree robbery, the post-conviction court could have found that his counsel simply failed to consider that option, a failure that petitioner asserts automatically establishes inadequate assistance. Petitioner's second argument tracks

the post-conviction court's reasoning. He argues that, even if his counsel made a conscious decision to forego asking for an instruction on third-degree robbery, the disparity between the sentences for first- and third-degree robbery was so great that no reasonable counsel would have made that choice.

We begin with petitioner's second argument. If the post-conviction court were correct that no reasonable counsel would have chosen to forego asking for an instruction on third-degree robbery, then it is immaterial whether petitioner's counsel consciously made that choice. Even if she did, her choice was not a reasonable one, or so the post-conviction court concluded. In resolving that issue, the historical circumstances that underlay counsel's choice present factual issues for the trial court, and we will uphold its factual findings if there is evidence in the record to support them. *Krummacher*, 290 Or at 869. The question whether, given those circumstances, counsel reasonably could have chosen to forego asking for an instruction on third-degree robbery presents a legal issue for the appellate courts. *See id.* at 869, 881 (independently determining whether counsel's tactical choice was reasonable); *accord Stevens*, 322 Or at 109-10 (reversing the post-conviction court's judgment because this court independently determined that trial counsel's investigation had not been reasonable).

In this case, petitioner argues that no reasonable counsel would have chosen to forego asking for an instruction on third-degree robbery because:

"there was a significant risk [in this case] that the jury would have been uncomfortable acquitting petitioner outright and would have been inclined to convict him of something. There was also a significant risk that a conviction [for first-degree robbery] would result in a 90-month prison term, while the presumptive term of the lesser offense [of third-degree robbery] was probation. Under those circumstances, the only reasonable option was to request an instruction on third-degree robbery."

The state responds that petitioner's trial counsel reasonably could have chosen to take an "all or nothing" strategy. The state observes that asking for an instruction on third-degree

robbery would have required defense counsel to identify an evidentiary basis for convicting petitioner that the prosecutor had not advanced.[6] The state argues additionally that, because the evidence of first-degree robbery was weak, defense counsel reasonably could have concluded that the jury would have acquitted petitioner of first-degree robbery.

As we understand petitioner's argument, he identifies two related but separate reasons why it would have been unreasonable for his counsel to forego asking for an instruction on third-degree robbery. First, the absence of an instruction on a lesser-included offense can enhance the likelihood that the jury will convict a defendant of the greater offense. Second, even if the absence of an instruction on a lesser-included offense does not have that effect, petitioner's counsel still should have given the jury a "fall-back" option of convicting defendant of a lesser offense. We begin with the first reason that petitioner identifies.

The courts have recognized, in different contexts, that the absence of an instruction on a lesser-included offense can affect the jury's verdict. *See Beck v. Alabama*, 447 US 625, 100 S Ct 2382, 65 L Ed 2d 392 (1980); *State v. Naylor*, 291 Or 191, 198-99, 198 n 6, 629 P2d 1308 (1981) (citing and paraphrasing *Beck*'s reasoning).[7] As the Court explained in *Beck*:

> "[W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify

---

[6] In petitioner's criminal trial, the prosecutor had neither alleged nor argued that, in struggling with the guard as the guard walked petitioner back to the store, petitioner committed the crime of robbery. In the prosecutor's view, the robbery occurred when, according to the guard, petitioner withdrew the gun from his backpack and pointed it at the guard.

[7] The question in *Naylor* was whether the erroneous denial of a requested lesser-included instruction was harmless. *See* 291 Or at 198-99. The question in *Beck* was whether a statute that prohibited instructing a jury in a capital murder case on a lesser-included charge of murder violated due process. *See* 447 US at 637-38. In this case, the question is whether petitioner's trial counsel reasonably could conclude that the benefits of not instructing the jury on the lesser-included charge of third-degree robbery outweighed the risks of not doing so. *Beck* and *Naylor* bear on the answer to that question in that they identify the circumstances in which the absence of a lesser-included instruction can enhance the risk of an unwarranted conviction on the greater offense.

conviction of a [greater] offense—the failure to give the jury the 'third option' of convicting of [the] lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction [on the greater offense]."

447 US at 637. *Beck* recognized that the absence of an instruction on a lesser-included offense can impermissibly enhance the risk of an unwarranted conviction when two factors are present. First, the element that elevates the lesser-included offense to the greater one must be doubtful. Second, and more importantly, there must be substantial evidence of a serious lesser offense. In those circumstances, the absence of an instruction on the lesser offense puts the jury to the choice of either convicting the defendant of a doubtful greater offense or acquitting the defendant altogether, despite the defendant's apparent guilt of a serious lesser-included offense.[8]

Applying those factors to this case, we note that one element distinguished first-degree robbery, as charged in this case, from third-degree robbery: the "use or attempted use of a dangerous weapon" with the intent of retaining the stolen property. If the jury believed that petitioner withdrew the gun from his backpack to retain the stolen property, then the jury should have found him guilty of first-degree robbery. If, however, the jury believed that petitioner withdrew the gun because the security guard ordered him to disclose the contents of his backpack, then the jury should have acquitted him of first-degree robbery. And because the prosecutor had not contended that a robbery occurred before petitioner withdrew the gun from the backpack, if the jury did not believe that petitioner used the gun to retain the stolen snack items, then the jury should have found that petitioner was not guilty of robbery at all. Rather, he was guilty, at most, of a Class C misdemeanor—third-degree theft. *See* ORS 164.043 (third-degree theft consists of the theft of property worth less than $100).

---

[8] *Beck* illustrates the problem. In that case, the state charged the defendant with capital murder. A state statute prohibited submitting the lesser-included charge of murder to the jury. Because the evidence "unquestionably established" that the defendant had murdered the victim, the absence of an instruction on the lesser-included offense of murder put the jury to the choice of either finding the defendant guilty of capital murder or not holding him liable for murder at all.

As the state argues, the evidence that petitioner used the gun with the intent to retain the stolen property was, at best, doubtful. Indeed, petitioner concedes in his brief on the merits that "[t]he jury was not likely to see petitioner as an armed robber." Not only had petitioner testified at his criminal trial that he had not pointed the gun at the guard, but the testimony from the store employee, who had understood what petitioner had said, corroborated petitioner's testimony. Specifically, the store employee testified that petitioner had asked, in Spanish, whether the security guard really wanted to see what he had in his backpack and then said, as he withdrew the gun and pointed it at the ceiling, that he did not want to hurt anyone. Given that evidence, petitioner's trial counsel reasonably could have determined that the evidence that petitioner had committed first-degree robbery was doubtful.

As *Beck* makes clear, however, that is only half of the equation. The question is not solely whether evidence that a defendant committed the greater crime was doubtful; rather, the other half of the question is what was the strength of the evidence that the defendant had committed a serious lesser crime. As *Beck* explained and *Naylor* echoed, if it is apparent that the defendant committed a serious lesser crime, then failing to instruct on the lesser offense increases the likelihood that the jury will find the defendant guilty of the doubtful greater crime rather than acquit the defendant altogether.

In this case, the evidence that petitioner committed the lesser-included crime of third-degree robbery can be described only as slight. As noted, a person commits third-degree robbery if, "in the course of committing or attempting to commit theft *** the person uses or threatens the immediate use of physical force upon another person with the intent of [p]reventing or overcoming resistance to the *** retention [of property] immediately after the taking." ORS 164.395. As discussed above, the evidence showed that, after petitioner left the store with the Twinkies and flavored milk, the security guard confronted petitioner, who attempted initially to back away with his hands up and then to flee. The guard tackled petitioner as he fled, took him to

the ground, and put petitioner in a submission hold. When the guard let petitioner stand back up, he held him in a "wristlock and headlock" as he walked petitioner back into the store.

The evidence that petitioner used force on the guard (other than any use of the gun) came in the midst of the security guard's testimony describing how the guard had tackled, subdued, and held petitioner in a wristlock and headlock. When asked whether petitioner "had attempted to pull away" from him as he walked petitioner back into the store, the guard said, "He was still struggling with me but once we got into the building he stopped the struggling."[9]

In the post-conviction court, petitioner argued (and the state did not dispute) that the guard's reference to petitioner "struggling" was sufficient to permit the jury to find that petitioner had used physical force on the guard to retain the Twinkies and thus was guilty of third-degree robbery.[10] While it is possible, with the benefit of hindsight and the luxury of time, to identify an evidentiary basis on which the jury could have found petitioner guilty of third-degree robbery, the evidence of physical force that petitioner identified at the post-conviction hearing can hardly be described as compelling, clear, or even substantial. Slight, evanescent, or even chimerical would be more apt. The evidence that petitioner identified at the post-conviction hearing that he had used force on the security guard consisted of one sentence in the middle of a passage primarily describing how the security guard had used force on petitioner (tackling petitioner

---

[9] We note that the guard also testified that, when he tackled petitioner and took him to the ground, he told petitioner "don't run, stop resisting." Petitioner does not rely on that reference to resisting to argue that there was evidence from which the jury could find that he used "physical force upon" the guard. *See* ORS 164.395 (defining third-degree robbery). Additionally, petitioner previously argued (but does not argue on review) that jury could have found that he used physical force when he held onto his backpack as the guard attempted to wrest it from him. In holding onto his backpack, petitioner was not using "force *upon* another," which is the relevant element of third-degree robbery. *See* ORS 164.395 (emphasis added).

[10] The Court of Appeals relied on that evidence as the basis for holding that petitioner's counsel should have requested an instruction on the lesser-included offense of third-degree robbery. On review, petitioner identifies an additional basis on which the jury could have found him liable of third-degree robbery. We discuss that basis below.

and putting him in a headlock, wristlock, etc.) to keep petitioner from fleeing.

This is not a case, as in *Beck*, where the evidence "unquestionably established" that petitioner was guilty of a serious lesser offense. Rather, this is a case in which the evidence that defendant had committed the lesser offense of third-degree robbery was barely apparent. The concern articulated in *Beck* and echoed in *Naylor* that the jury would convict petitioner of a doubtful charge of first-degree robbery to avoid acquitting him of an apparent third-degree robbery was minimal, at most.[11]

To be sure, it was undisputed that petitioner had committed theft. However, not only has petitioner not claimed that his counsel was constitutionally deficient for not asking for an instruction on that lesser-included offense, but petitioner's theft was a relatively minor one. Petitioner shoplifted two packages of Twinkies and a carton of flavored milk, an offense that could have been charged only as third-degree theft, a Class C misdemeanor. *See* ORS 164.043 (defining theft of property worth less than $100 as third-degree theft, which is a Class C misdemeanor).

In these circumstances, petitioner's trial counsel reasonably could have concluded that the absence of an instruction on third-degree robbery would not have impermissibly skewed the jury's verdict towards a conviction for first-degree robbery, as the absence of an instruction on the lesser-included charge of murder in *Beck* skewed the jury's verdict in that case towards a conviction for capital murder. She also reasonably could have concluded that, faced with the choice of convicting petitioner of the doubtful crime of first-degree robbery or acquitting him altogether, the jury would choose the latter course. The jury, of course, convicted petitioner of first-degree robbery. However, our cases teach

---

[11] In his brief on the merits, petitioner argues that the jury also could have found him guilty of third-degree robbery based on his use of the gun. Logically, petitioner's argument is problematic. If, as the prosecutor argued, petitioner withdrew the gun and pointed it at the guard to retain the stolen Twinkies, then petitioner was guilty of first-degree robbery. If, however, as petitioner argues in his brief on the merits, he withdrew the gun solely because the guard directed him to do so, then his display of the gun did not constitute the use of physical force with the intent to retain the stolen snack items, which could elevate his theft of those items to third-degree robbery.

that we must not evaluate the reasonableness of counsel's choice with the benefit of hindsight. Rather, the question is whether the choice was a reasonable one at the time it was made. *Montez*, 355 Or at 7.

As noted, petitioner appears to advance a related but separate argument. Petitioner appears to argue that, even if the absence of an instruction on third-degree robbery would not have enhanced the risk of an unwarranted conviction on the first-degree robbery charge, as in *Beck*, his trial counsel still should have asked for an instruction on third-degree robbery simply to give the jury another, less onerous option. To the extent that is petitioner's argument, it fails to take account of ORS 136.460.

If the trial court had instructed the jury on the lesser-included charge of third-degree robbery, then the state would have been entitled to an acquittal-first instruction—namely, it would have been entitled to an instruction that the jury had to decide the first-degree robbery charge before it could decide the third-degree robbery charge. *See* ORS 136.460; *State v. Zolotoff*, 354 Or 711, 716, 320 P3d 561 (2014) (explaining the effect of ORS 136.460(2)). Under ORS 136.460(2), if the jury found petitioner guilty of first-degree robbery, then the jury would not have reached the third-degree robbery charge.[12] Conversely, if the jury acquitted petitioner of first-degree robbery, then instructing the jury on third-degree robbery would have exposed petitioner to liability on that charge when he otherwise would have gone free. Put differently, if the absence of an instruction on third-degree robbery would not have enhanced the risk that the jury would convict him of first-degree robbery, as in *Beck*, then asking for an instruction on the lesser-included offense would have unnecessarily exposed petitioner to the risk of a conviction for that offense, or so his counsel reasonably could have concluded.

Given ORS 136.460, petitioner's counsel reasonably could have concluded that, if the only point in asking for an instruction on third-degree robbery was to give the jury a less onerous option, doing so would not have advanced

---

[12] ORS 136.460(2) provides, in part: "Only if the jury finds the defendant not guilty of the charged offense may the jury consider a lesser included offense."

petitioner's interests. To be sure, as *Beck* and *Naylor* recognized, the failure to instruct the jury on a lesser-included charge can enhance the risk of an unwarranted conviction in some cases. However, as explained above, that is not this case. In this case, petitioner's counsel reasonably could have concluded that an "all or nothing" strategy was appropriate. We accordingly disagree with petitioner and the post-conviction court that, in these circumstances, no reasonable trial court counsel would have chosen to forego an instruction on third-degree robbery.[13]

The remaining question is whether petitioner's trial counsel made a conscious choice to forego asking for an instruction on third-degree robbery and, if she failed to consider that option, what the legal consequences of that failure are. As noted, the Court of Appeals reasoned that the post-conviction court made an implicit factual finding that petitioner's counsel failed to consider asking for an instruction on third-degree robbery, an omission that, in the Court of Appeals' view, automatically established inadequate assistance. Petitioner urges us to adopt that reasoning. In our view, the Court of Appeals' reasoning is erroneous in two respects. First, the post-conviction court did not make the factual finding that the Court of Appeals attributed to it. Second, as this court recently explained in *Montez*, the failure to consider every possible tactical choice does not automatically establish inadequate assistance.

We begin with petitioner's argument that the post-conviction court found that his trial counsel failed to consider asking for an instruction on third-degree robbery. Because the post-conviction court did not find that fact explicitly, the issue is whether it did so implicitly. On that issue, we presume

---

[13] The dissent would hold otherwise. As we read the dissent, we differ on primarily one point. In our view, the question is not whether the trial court should have given an instruction on third-degree robbery if petitioner had requested it. Rather, the question is whether petitioner's counsel reasonably could have determined to forego asking for that instruction. On that issue, the reasons why the absence of an instruction on a lesser-included offense that the Court identified in *Beck* will affect a jury's decision-making matter. Indeed, as the second paragraph that the dissent quotes from *Beck* recognizes, sometimes the absence of a lesser-included instruction "may favor the defendant." *Beck*, 447 US at 643. For the reasons explained above, petitioner's counsel reasonably could have drawn that conclusion in this case.

that a trial court implicitly resolves factual disputes consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). That presumption has its limits, however. If an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply. *See State v. Jackson*, 296 Or 430, 440, 677 P2d 21 (1984) (declining to attribute an implicit factual finding to a trial court when that court "never made *any* conclusions" regarding that factual issue) (emphasis in original); *State v. Lunacolorado*, 238 Or App 691, 243 P3d 125 (2010) (explaining that appellate courts may presume that a trial court made implicit factual findings when "there is conflicting evidence about a fact that is a necessary predicate to the court's conclusion").

In this case, the implicit factual finding that the Court of Appeals and petitioner attribute to the post-conviction court was not necessary to its ruling. Rather, the post-conviction court ruled in its letter opinion that "no reasonably qualified defense attorney would have made the choice complained about in the post-conviction proceeding." That ruling did not require the post-conviction court to decide whether petitioner's counsel in fact made a strategic choice to forego asking for an instruction on third-degree robbery. Instead, the ruling assumes that petitioner's counsel "made the choice complained about in the post-conviction proceeding" and concludes that that choice constituted inadequate assistance because "no reasonably qualified defense counsel" would have made it. We cannot assume that the post-conviction court made the implicit factual finding that petitioner attributes to it.

The question accordingly arises whether we should remand this case to the trial court to make that finding. In the state's view, no remand is necessary because petitioner failed to meet his burden of production. As noted above, we agree with the state that petitioner has the burden of production and persuasion on that issue. *See* ORS 138.620(2) (placing the burden of proof on the petitioner in a post-conviction proceeding); *State v. Probst*, 339 Or 612, 627-28, 124 P3d 1237 (2005) (holding that, in considering a collateral challenge to a final conviction, a presumption

of regularity attaches that shifts the burden of persuasion to the person challenging the conviction); *Strickland*, 466 US at 690 (counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").[14] We also agree with the state that petitioner did not submit any direct evidence that his trial counsel inadvertently failed to consider asking for an instruction on third-degree robbery. Indeed, neither party submitted any testimony from petitioner's trial counsel at the post-conviction hearing.[15] The question accordingly becomes whether the circumstantial evidence in the record is sufficient to meet petitioner's burden of production.

On that question, petitioner identifies one basis for saying that the post-conviction court could have found that his counsel failed to consider asking for a lesser-included instruction. He argues that, because no reasonable counsel would have failed to ask for a lesser-included instruction, the post-conviction court could infer that his counsel simply failed to consider that possibility. As explained above, however, the assumption on which petitioner's argument rests is not correct: In these circumstances, petitioner's counsel reasonably could have chosen to forego asking for an instruction on third-degree robbery.

We note, however, that other evidence in the record would permit the trial court to infer that petitioner's counsel did not make a conscious choice to forego asking for an instruction on third-degree robbery. For example, as discussed above, the testimony that petitioner struggled when the guard took him back into the store was, in context, so fleeting that petitioner's counsel may not have considered

---

[14] The presumption that the Court recognized in *Strickland* effectively shifts the burden of production and persuasion to the petitioner to establish that his or her counsel did not make "all significant decisions in the exercise of reasonable professional judgment." *Cf. State v. Dahl*, 336 Or 481, 487, 87 P3d 650 (2004) (explaining that, under Oregon law, a presumption ordinarily shifts the burden of production and persuasion). In that respect, it serves the same function as ORS 138.620(2), which explicitly places the burden of production and persuasion on petitioner.

[15] The parties represented at the post-conviction hearing that petitioner's trial counsel had declined to speak with them. Although petitioner's trial counsel apparently was available to testify, neither party subpoenaed her to give testimony either at a deposition or at the post-conviction hearing.

the lesser-included charge that now forms the centerpiece of petitioner's post-conviction claim. At least, the post-conviction court could draw that inference, and it could further infer that, as a result, petitioner's counsel did not make a tactical choice to forego asking for an instruction on third-degree robbery.

There may be other evidence that petitioner can identify on remand that would permit the same factual inference. Our point is not to catalogue all the evidence that would permit the post-conviction court to infer that petitioner's counsel failed to consider asking for an instruction on third-degree robbery. Rather, our point is to recognize that, contrary to the state's argument, there is evidence in the record from which the post-conviction court could find that petitioner's counsel failed to consider asking for a third-degree robbery instruction. Put differently, petitioner met his burden of production. Whether he also has met his burden of persuasion on that factual issue is a question for the post-conviction court on remand.

If the post-conviction court finds on remand that petitioner has not met his burden of persuasion on that issue and that petitioner's counsel made a tactical choice, *see Strickland*, 466 US at 490 (recognizing a presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment"), then that choice was a reasonable one for the reasons explained above.[16] Conversely, if the post-conviction finds that petitioner has met his burden of persuasion and that his counsel failed to consider asking for an instruction on the lesser-included offense of third-degree robbery, then the question whether petitioner's coun-

---

[16] In *Yarborough v. Gentry*, 540 US 1, 124 S Ct 1, 157 L Ed 2d 1 (2003), the Court reasoned:

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland*, 466 US at 690 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' *Massaro v. United States*, 538 US 500, 505 (2003)."

*Id.* at 8.

sel provided constitutionally adequate assistance becomes slightly more complex. As this court recently explained, the failure to consider an issue or undertake a particular investigation does not automatically constitute inadequate assistance. *See Montez*, 355 Or at 14-16, 24 (discussing that issue in different contexts). However, "the absence of strategic thought or direction on the part of a defense team" can constitute inadequate assistance. *See id.* at 27-28.

As *Montez* explains, whether the failure to consider an issue constitutes inadequate assistance will turn on, among other things, whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense counsel failed to consider and the strategy that counsel did pursue, and the extent to which counsel should have been aware of the strategy that petitioner now identifies. *See id.* at 24 ("The fact that petitioner would, in retrospect, have implemented his mitigation defense in one or more different ways is not a ground for post-conviction relief if counsel acted reasonably in presenting the defense that they did."); *cf. Yarborough v. Gentry*, 540 US 1, 9, 124 S Ct 1, 157 L Ed 2d 1 (2003) (even if defense counsel inadvertently failed to discuss certain facts and themes in closing argument, that failure was not unreasonable in light of the themes that counsel did pursue).

If, on remand, the post-conviction court finds that petitioner has proved that his counsel failed to consider asking for an instruction on third-degree robbery, then the post-conviction court will have to decide whether that failure constituted inadequate assistance based on the reason for that failure, considered in light of the strategy that the court finds petitioner's counsel did pursue. We accordingly reverse the Court of Appeals decision and the post-conviction court's judgment and remand this case for further proceedings consistent with this opinion.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings.

**WALTERS, J.,** concurring in the judgment.

When a defendant is entitled to a jury instruction on a lesser-included offense, competent trial counsel must make a conscious choice about whether to request such an instruction. *See Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002); *Stevens v. State*, 322 Or 101, 109, 902 P2d 1137 (1995) (tactical decisions require a conscious choice to take or to omit action). In making such a choice, counsel must consider the "likely costs and potential benefits of the contemplated action." *Lichau*, 333 Or at 360.

In this case, as the majority acknowledges, there is evidence in the record that would permit the post-conviction trial court to conclude that petitioner's trial counsel failed to make such a conscious choice or engage in such a cost-benefit analysis. However, because the court's letter opinion does not include an express finding to that effect, the majority remands for a determination of those facts. I concur, but write separately to emphasize some of the factors that the post-conviction trial court may wish to consider in determining whether petitioner's trial counsel made a deliberate decision not to seek a jury instruction on third-degree robbery or unreasonably failed to consciously consider that approach.

The factors that I consider particularly significant in this case are the high degree of risk posed by the failure to request a jury instruction on third-degree robbery and the low cost of seeking such an instruction. In this case, the "all or nothing" approach that trial counsel took (whether wittingly or unwittingly) meant that the only crime for which the jury could convict defendant was first-degree robbery—a crime that carries a mandatory minimum sentence of 90 months (seven and one-half years). The jury could not convict defendant of the lesser crime of third-degree robbery, which carries a sentence ranging from probation to 16 months in prison. The post-conviction trial court found that the evidence relevant to those offenses was "in sharp dispute." The court explained that, "[i]f the store employees are to be believed, there was clearly a Robbery I. If the petitioner in this case is believed there was at most a Robbery III and maybe only a Theft." The post-conviction trial court

concluded that, "short of evidence that the petitioner in this case instructed the trial attorney to take an 'all or nothing' approach as she did (and there is no such evidence), I simply cannot imagine why defense counsel would not have at least asked for at least a Robbery III and probably should have asked for a simple Theft instruction as well."

Although the post-conviction court did not say so expressly, its conclusion may well reflect the view that, given the particular facts in this case, the risk that an "all or nothing" strategy posed was so high (seven and one-half years of certain confinement on conviction), and the cost of seeking a lesser-included offense instruction was so low (adding a possibility of short-term imprisonment without relinquishing an argument for acquittal), that it is more probable than not that petitioner's trial counsel did not engage in the necessary decision-making. On remand, the post-conviction court will have an opportunity to consider those and other factors identified by the majority, the dissent, and the parties, and to determine whether counsel consciously made a tactical decision not to request a jury instruction on third-degree robbery. The legislature has directed that a jury be instructed on relevant lesser-included offenses on request. *State v. Zolotoff,* 354 Or 711, 717, 320 P3d 561 (2014). A decision to forego such a request may not be unreasonable as a matter of law, but the post-conviction court must be persuaded that, as a matter of fact, trial counsel consciously chose to adopt such an "all or nothing" strategy.

**BALDWIN, J.,** dissenting.

The issue in this case is whether petitioner's trial counsel failed to exercise reasonable professional skill and judgment resulting in prejudice to petitioner when she did not request a jury instruction on a lesser-included offense carrying a presumptive term of probation and petitioner was instead convicted of a greater offense carrying a mandatory 90-month prison term. Reversing the judgments of the trial court and the Court of Appeals, the majority concludes that trial counsel could have reasonably decided not to request the lesser-included instruction. I respectfully dissent.

This is a case where petitioner admitted at trial that he shoplifted and that he had a handgun in his backpack

at the time he did so. Without a lesser-included instruction, the jury was faced with two options only—convict petitioner of first-degree robbery or fully acquit him when he had admitted criminal wrongdoing and might have posed a threat to the community. Under those circumstances, and absent any evidence that petitioner directed trial counsel to take a high-risk "all or nothing" strategy, the veteran trial judge below could not conceive of a scenario where a reasonable attorney would not have requested a lesser-included third-degree robbery instruction. Further, the state has not disputed that petitioner was entitled to receive that lesser-included instruction based on the evidence.

Although the Court of Appeals affirmed the trial court's judgment based on a conclusion that the record was sufficient to support a finding that trial counsel did not consider whether to request the lesser-included instruction, its core analysis is persuasive and in accord with this court's prior case law:[1]

"Third-degree robbery is a lesser-included offense of first-degree robbery. *See* ORS 164.415(1) (person commits first-degree robbery by committing third-degree robbery, ORS 164.395, under circumstances constituting first-degree robbery). Based on the record in the underlying criminal trial, which was included in the post-conviction trial record, the post-conviction court could find that it was highly likely that the jury would convict petitioner of first-degree robbery, particularly when the only charge before the jury was first-degree robbery.

"Further, the difference in sentences for first- and third-degree robbery convictions is great. The sentence that petitioner would and did receive for conviction for first-degree robbery is 90 months. In contrast, the sentence for a conviction for third-degree robbery would range between probation and 16 months' imprisonment, depending on

---

[1] Although the core analysis of the Court of Appeals decision is sound, the court's description of its ruling is overly broad when it suggests that a defendant is always prejudiced by trial counsel's failure to request a lesser included instruction when the jury "[does] not a have a complete statement of the law." *Pereida-Alba v. Coursey*, 252 Or App 66, 72, 284 P3d 1280 (2012). As this court has stated, "in many instances, a trial court's failure to give a lesser-included instruction, although error, may be harmless error." *State v. Zolotoff*, 354 Or 711, 719, 320 P3d 561 (2014).

petitioner's criminal-history score. *See* OAR 213-004-0001; OAR 213-017-0007(20).

"Moreover, in contrast with other cases in which the need to address lesser-included offenses may undercut the arguments and strategies that a defense attorney can use to defend against more serious charges, instructing the jury on third-degree robbery would not have compromised the defense attorney's ability to defend against the first-degree robbery charge because of the distinction that could be made between the events that occurred outside the store, when petitioner was tackled and restrained by the security guard, and those that occurred inside the store when petitioner was questioned about the theft. The upshot is that there was no evident downside to petitioner from requesting an instruction on third-degree robbery and a significant potential benefit to him from doing so."

*Pereida-Alba v. Coursey*, 252 Or App 66, 71, 284 P3d 1280 (2012).

On review, the majority has correctly identified the question of whether counsel reasonably could have chosen to forego asking for an instruction on third-degree robbery as a legal issue. *See Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). In approaching that issue, the majority cites *Beck v. Alabama*, 447 US 625, 100 S Ct 2382, 65 L Ed 2d 392 (1980), and *State v. Naylor*, 291 Or 191, 629 P2d 1308 (1981), for the general proposition that "courts have recognized, in different contexts, that the absence of an instruction on a lesser-included offense can affect the jury's verdict." 356 Or at 664. The majority also correctly relies on *Beck* and *Naylor* for the observation that a jury's verdict may be affected when the evidence that a defendant committed a greater crime is doubtful and there is evidence that a lesser-included offense has been committed but an instruction on the lesser-included offense has not been given. Claiming to draw on the rationale of these cases, the majority then creates a new test in post-conviction cases where prejudice results from a failure of counsel to request a lesser-included instruction; however, that test is faulty.

Although the majority recognizes that a failure to request a lesser-included instruction may constitute inadequate assistance of counsel, it now creates a novel

requirement that a petitioner must demonstrate that the evidence relating to the commission of the lesser-included offense was strong in order to obtain post-conviction relief:

> "The question is not solely whether evidence that a defendant committed the greater crime was doubtful; rather, the other half of the question is what was the strength of the evidence that the defendant had committed a serious lesser crime. \* \* \*

> "In this case, the evidence that petitioner committed the lesser-included crime of third-degree robbery can be described only as slight."

356 Or at 666. I do not think that the new test fashioned by the majority is sound.

In *Beck*, the United States Supreme Court held that, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the death penalty could not be imposed when a jury, based on a state law prohibition, was not permitted to consider defendant's guilt of a lesser-included noncapital offense when evidence in the record would have supported a guilty verdict on the noncapital offense. The Court's decision was largely based on the enhanced risk of an unwarranted death penalty conviction when a jury is deprived of a "third option" of convicting a defendant on a lesser-included offense:

> "While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

> "\* \* \* \* \*

> "\* \* \* Thus, on the one hand, the unavailability of the third option of convicting on a lesser included offense may

encourage the jury to convict for an impermissible reason—
its belief that the defendant is guilty of some serious crime
and should be punished. On the other hand, the apparently
mandatory nature of the death penalty may encourage it
to acquit for an equally impermissible reason—that, what-
ever his crime, the defendant does not deserve death. In
any particular case these two extraneous factors may favor
the defendant or the prosecution or they may cancel each
other out. But in every case they introduce a level of uncer-
tainty and unreliability into the factfinding process that
cannot be tolerated in a capital case."

*Beck*, 447 US at 637, 642-43 (footnote omitted).

          In *Beck*, there was no question that the defendant
was entitled to a lesser-included instruction absent a stat-
ute prohibiting such instructions in death-penalty cases.
The Court did not find it necessary to discuss the sufficiency
of the evidence to support the lesser-included instruction.
Simply put, *Beck* does not stand for the proposition that a
state court in a post-conviction proceeding must or should
assess how strong the evidence is in support of a lesser-
included offense in reviewing a lawyer's failure to request
a lesser-included instruction when there is evidence to sup-
port the lesser-included instruction.[2] To the extent that *Beck*
does have a bearing on this case, the Court's observations
about the significant risk of an unjustified conviction when
a jury is not provided with a "third option" tends to support
petitioner's position in this case.

          In *Naylor*, this court held that a trial court's error
in failing to give an instruction on a lesser-included offense
was not harmless. Defendant was convicted of first-degree

---

[2] The majority's interpretation of *Beck* is undermined by the United States
Supreme Court's subsequent discussion of that case:

     "*Beck* held that due process requires that a lesser included offense
     instruction be given when the evidence warrants such an instruction. * * *
     The federal rule is that a lesser included offense instruction should be given
     'if the evidence would permit a jury rationally to find [a defendant] guilty of
     the lesser offense and acquit him of the greater.'"

*Hopper v. Evans*, 456 US 605, 611-12, 102 S Ct 2049, 72 L Ed 2d 367 (1982) (quot-
ing *Keeble v. United States*, 412 US 205, 208, 93 S Ct 1993, 36 L Ed 2d 844 (1973));
*see also Aguilar v. Dretke*, 428 F3d 526, 531 (5th Cir 2005) (under *Beck*, "[a] defen-
dant is entitled to the instruction if the jury could rationally acquit the defendant
on the capital crime and convict on the non-capital crime.").

burglary when "[t]here was evidence which, if believed, would have justified only a verdict and conviction of criminal trespass in the second degree." 291 Or at 193. The court did not have occasion to discuss any issue relating to the strength or sufficiency of the evidence supporting the lesser-included offense. Rather, the court observed that the legislature, by enacting ORS 136.465, intended to provide a jury with a "third option" when there is any evidence which would support a verdict on a lesser offense and the jury would otherwise be faced, as they were here, with the limited option of conviction or acquittal:

> "ORS 136.465 represents a legislative choice that both the state and the defendant shall have a right to have a jury, in appropriate circumstances, consider whether the defendant is guilty of an offense less than that with which the defendant has been charged. One of the apparent reasons for the grant to the jury of this power is to avoid placing the jury in the position of making an all-or-nothing choice as between guilt and innocence *where there is evidence which would justify a verdict of guilty of a lesser offense*. The difficulty with presenting the jury with the all-or-nothing choice is that the jury may believe a defendant to be guilty of some apparent violation of the criminal code but not of the crime charged. The jury is then confronted with the choice of finding innocent a defendant it believes has been guilty of wrongdoing or finding a defendant guilty of a crime greater than that which the jury believes he has committed. That result of such a choice may in one case redound to the benefit of the defendant and, in another, to the "benefit of the prosecution," assuming that an unjustified conviction can ever be found to be to the benefit of the people. By statute the legislature provides the means for avoidance of this Hobson's choice."

*Naylor*, 291 Or at 198-99 (footnote omitted) (emphasis added). *Naylor* is neither binding nor persuasive authority for the constricted requirement the court creates today. To the contrary, the rationale of *Naylor* also tends to support petitioner's position in this case. *See also [Zolotoff](#)*, 354 Or 711, 718, 320 P3d 561 (2014) ("ORS 136.460(2) does not preclude the jury from contemplating the law as it applies to lesser-included offenses when deliberating about the charged offense.").

As stated, both *Beck* and *Naylor* express the serious concern that a failure to give a lesser-included instruction may result in an unjustified conviction of a greater offense when a lesser-included instruction is supported by sufficient evidence to support a jury finding that a defendant is guilty of the lesser offense. Neither opinion states that such a concern is absent where the evidence that the defendant committed the lesser offense is doubtful or not "substantial." As noted, in *Naylor*, the court stated that a jury should be presented with a "third option" of a lesser included offense "where there is evidence which would justify a verdict of guilty of a lesser offense." 291 Or at 198. With respect, the test that the majority creates also misconceives the role of a reviewing court in such cases. So long as there is sufficient evidence to justify a guilty verdict of a lesser offense, it is for a jury to determine whether the defendant has committed a greater or a lesser offense.

This court recently stated that, in evaluating the reasonableness of trial counsel's representation, "we do not inquire into counsel's subjective state of mind; instead, we inquire into the objective reasonableness of counsel's performance." *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487 (2014) (citing *Harrington v. Richter*, 562 US ___, 131 S Ct 770, 178 L Ed 2d 624 (2011)). Based on an objective review of the record in this case, I can conclude only that petitioner's trial counsel could not reasonably have decided not to request the lesser-included instruction that petitioner was entitled to receive under ORS 136.460. Petitioner was charged with first-degree robbery, a Class A felony carrying a mandatory 90-month prison term. It is undisputed that the evidence was doubtful that petitioner had used his firearm to retain the items that he had shoplifted. Nevertheless, if petitioner were convicted of the charged offense, the trial court was required to impose the full 90-month prison term (as it did). It is also undisputed that there was evidence that justified a verdict of the lesser offense of third-degree robbery, a Class C felony carrying a presumptive term of probation. There is no evidence in the record tending to show that petitioner requested that he risk the benefit of a term of probation over a lengthy prison term or that trial counsel had a reason for adopting such a high-risk "all or nothing" strategy that could

result in petitioner serving a lengthy prison term. As stated by the trial court and the Court of Appeals, there was no evident upside to trial counsel failing to protect petitioner from a conviction on a greater offense carrying a lengthy mandatory prison term as compared to a conviction on a lesser offense carrying a presumptive term of probation; the downside was obvious. Thus, petitioner met his burden of proving that his trial counsel failed to exercise reasonable professional skill and judgment by not requesting the lesser-included instruction and that the failure resulted in prejudice to petitioner. *Trujillo*, 312 Or at 435.

Further, this court has long observed that

"[e]rrors which result from a failure to use the professional skill and judgment for which the lawyer is employed cannot be characterized as tactical choices. In other words, if counsel exercises reasonable professional skill and judgment, a reviewing court will not second-guess the lawyer in the name of the constitution, but neither will the court ignore decisions made in the conduct of the defense which reflect an absence or suspension of professional skill and judgment."

*Krummacher v. Gierloff*, 290 Or 867, 875-76, 627 P2d 458 (1981). As stated, petitioner has demonstrated that his trial counsel failed to exercise the reasonable professional skill and judgment for which she was employed; that failure cannot properly be characterized as a tactical choice. *See also Stevens v. State of Oregon*, 322 Or 101, 109, 902 P2d 1137 (1995) ("[T]he fact that a lawyer has made a 'tactical decision' does not mean that the lawyer's choice meets the constitutional standard for adequate assistance of counsel.").

Finally, the majority has failed to give adequate weight to the trial court's considered assessment of the reasonableness of trial counsel's representation in this case. Instead, the majority has substituted its own judgment for that of the trial court without a persuasive explanation of why it has done so. Moreover, the majority appears to speculate about trial counsel's subjective state of mind and the abstract possibility that counsel might have made a tactical decision not to request the lesser-included instruction. The

majority should have focused on the objective reasonableness of trial counsel's performance as required by *Montez*. Viewed objectively, counsel's failure to request the lesser-included instruction was not reasonable. I therefore respectfully dissent.