Submitted March 21, 2016, reversed and remanded with instructions to grant the petition for post-conviction relief April 19, 2017

JOSHUA AMES CARTRETTE,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
1303145P; A157225

395 P3d 627

Jed Peterson and O'Connor Weber LLP filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

**LAGESEN, J.**

Petitioner is serving a 70-month sentence on a conviction for second-degree assault, ORS 163.175, in the custody of defendant, the Superintendent of the Snake River Correctional Institution (the superintendent). Petitioner's conviction arose from a physical altercation between petitioner and another man, Johnson. Petitioner claimed self-defense at trial and seeks post-conviction relief on the ground that his lawyer provided constitutionally-deficient assistance of counsel, in violation of his rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, by failing to call a particular witness, Smith. Smith, who was under subpoena at the time of petitioner's trial but was not called, would have impeached Johnson's testimony that petitioner started the fight by testifying that Johnson admitted to him that he had started the fight, but that he needed for petitioner to be convicted in order to receive financial assistance for his medical bills. The post-conviction court denied relief. Although the court thought that "trial counsel should have called" Smith, and that Smith's testimony would have been "helpful" to defendant's case, it determined that trial counsel's failure to do so did not amount to a constitutional violation because, under the circumstances of petitioner's criminal case, "it really didn't matter * * * exactly who started the fight," notwithstanding petitioner's claim of self defense. We conclude otherwise and reverse and remand with instructions for the post-conviction court to grant petitioner relief from his conviction for second-degree assault.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in a manner consistent with the post-conviction court's implicit and explicit factual determinations. In that regard, we note that the post-conviction court expressly opined that Smith's testimony would have been "helpful" to petitioner's case, and that trial counsel "should have" called Smith to testify at petitioner's trial, and presume that the post-conviction court implicitly found

---

[1] Petitioner raises two other assignments of error. Our disposition obviates the need to address them.

the facts about Smith and his likely testimony consistently with those explicitly stated determinations.

The fight that led to petitioner's conviction occurred when petitioner accompanied his girlfriend, Carroll, to drop off her daughter for a visit with Johnson, Carroll's previous boyfriend. Although Johnson was not the father of Carroll's daughter, he had formed a close relationship with her during the course of his five-year relationship with Carroll, and Carroll had agreed to permit her daughter to attend a barbecue at Johnson's uncle's home. Petitioner and another man, Watkins, went with Carroll to drop off her daughter. Shortly after their arrival, petitioner and Johnson became involved in a physical altercation. That altercation left Johnson with significant injuries to the left side of his face, breaking his left eye socket and his nose. As a result, he had to have titanium plates and screws placed in his face, and he suffers from nerve damage and permanent impairment to his vision. Petitioner, who has some skills in mixed martial arts, emerged from the confrontation relatively unharmed.

Although the fight and the injuries that Johnson suffered are not disputed, petitioner's account of the details of the fight differs significantly from Johnson's. According to Johnson, petitioner and Watkins "jump[ed]" him. Petitioner came after Johnson, and Watkins held Johnson while petitioner punched him. Johnson blacked out and fell to the ground and, when he regained consciousness, he was being kicked or kneed in the head.

In contrast, according to petitioner, Johnson started the fight, coming after petitioner while he was still sitting in the front passenger seat of Carroll's car. Petitioner, who has experience with mixed martial arts techniques, managed to get himself out of the car and punch Johnson, which caused Johnson to fall to the ground. When Johnson got up, petitioner hit him twice more to make sure that he stayed down. Petitioner and Watkins then fled. Watkins's version of events echoed petitioner's. According to Watkins, Johnson launched a "full on attack" on petitioner, and petitioner simply tried to defend himself. Watkins denied participating in the fight at all.

The state charged petitioner and Watkins with second-degree assault and third-degree assault.[2] Watkins was tried first. The state's theory of the case was that petitioner and Watkins had attacked Johnson. The testimony of Johnson and his nephew, who had been present at the fight, provided the primary support for that theory. Johnson testified that petitioner came after him and that Watkins held him while petitioner hit him numerous times until he went down. Johnson's nephew testified similarly that, although he had been inside and not witnessed the start of the fight, he had heard someone shout "grab him." When Johnson's nephew ran outside, he saw petitioner and Watkins kicking or hitting Johnson while Johnson was on the ground.

Watkins's defense theory, in contrast, was that Johnson attacked petitioner and that Watkins's involvement was, at most, a brief attempt to pull Johnson off of petitioner. The defense supported that theory both through the testimony of Watkins and Carroll about the events of the night in question, and through an impeachment witness, Smith. Watkins testified that Johnson started the fight while petitioner was still in the car, that petitioner had struck Johnson a few times in self defense, and that Watkins was not involved at all, except possibly for a brief attempt to pull Johnson away from petitioner. Watkins explained that he and petitioner fled after Johnson's nephew said that he was going to get his gun. Likewise, Carroll testified that Johnson had attacked petitioner while petitioner was still in the car, at which point Carroll went into the house to get her daughter to leave.

The impeachment witness, Smith, testified that he shared a cell with Johnson for three days a little over a month after the fight. During that time, Johnson told Smith several different versions of what had happened during the fight. The first version was that Johnson had been attacked by two of his friends. Later, Johnson changed the story "a little bit," and then, on the last night that they shared a cell, Johnson told Smith "the version of what really happened." Johnson told Smith that he had initiated the attack on petitioner while petitioner was still in the car, and then someone

---

[2] The state later dismissed the third-degree assault charge against petitioner.

had pulled him off of petitioner, at which point petitioner hit Johnson. Johnson also told Smith that he needed for petitioner and Watkins to be found guilty so that he could get victim's assistance to cover his medical bills because Johnson's family "didn't really have a lot of money to pay for the bills." Smith testified that, about a week after Johnson's disclosures, he met petitioner in jail, and recounted what Johnson had said to him. Smith never met Watkins. Smith also admitted to having convictions for Theft I, malicious mischief, and criminal trespass.

The jury acquitted Watkins. More than a month before petitioner's trial, Watkins's defense team alerted petitioner's defense team that Smith had been "a good witness, jail clothes [and] all." Trial counsel's investigator met with Smith, confirmed that he was willing to testify at petitioner's trial, and trial counsel subpoenaed Smith to testify at petitioner's trial.

At his trial, petitioner's defense was self-defense; petitioner did not dispute that he hit the victim three times, or the extent of the victim's injuries. The state argued that the jury should reject petitioner's claim of self-defense for two reasons. First, the state argued that, if the jury believed Johnson that petitioner had been the initial aggressor, then "there's no need to consider the self-defense claim. That would be the first theory that we would submit to you folks would apply in this particular case." Second, the state argued that the jury should find that the force used by petitioner was not reasonable under the circumstances and reject petitioner's claim of self-defense for that reason. In support of the state's case, Johnson and his nephew testified in much the same way that they had at Watkins's trial. Petitioner's trial counsel impeached Johnson with text messages he had sent to Carroll after the fight. The text messages indicated that Johnson still had strong feelings for Carroll, and that he would do "all I can to see to it that [petitioner and Watkins] get the most time I can."

The defense relied primarily on the testimony of Carroll and Watkins, which was along the same lines as their testimony at Watkins's trial. The prosecution impeached Carroll with the fact that she had previously told

investigators that she had not seen the start of the fight, contrary to her trial testimony. It impeached Watkins with the facts that he did not like Johnson because of how he treated Carroll, that he was "more friends" with Carroll and petitioner than he was with Johnson, and that he originally lied to police about being present at the fight. Trial counsel did not call Smith to testify as an impeachment witness, even though he was under subpoena and available to testify.

The jury convicted petitioner of second-degree assault. Petitioner appealed, but this court granted petitioner's later motion for dismissal of that appeal. He then initiated this proceeding for post-conviction relief, alleging, among other things, that trial counsel rendered constitutionally inadequate and ineffective assistance of counsel when she did not call Smith to testify at petitioner's criminal trial. In her deposition in connection with the case, which was submitted into evidence at the post-conviction trial, trial counsel gave an undisputedly inaccurate account as to why she did not call Smith as a witness. She testified that, "on the day of trial," petitioner had suggested that she call Smith. Because she did not know "anything about" Smith, however, she advised petitioner against calling him because she had not had the opportunity to run his criminal history or assess whether Smith would make a "credible witness." Trial counsel denied having Smith under subpoena, stating that Smith "showed up with some other associates" of petitioner's at the trial.

As noted, the post-conviction court denied relief. Regarding the claim based on trial counsel's failure to call Smith, the court explained:

"Well, certainly it's—it's strange when trial counsel can't let you know during deposition why—what the decision was—the reason for the decision that she made not to call this witness. Clearly, without any doubt, I—I find this witness would have been helpful to the Petitioner's case. How could he not have been helpful? But, [the superintendent's] point is, you've got to show that this was constitutionally inadequate not just best practices. Best practice would be clearly to call Mr. Smith and let the jury decide. [The superintendent's] point is it really didn't matter and—I believe that's borne out by the—by the evidence

presented to me in this case, exactly who started the fight although the State has clearly alleged this gentlemen did. But it was more the escalation of the fight and the injuries sustained by the victim. And I so, while I find that trial counsel should have called this witness, I do not find that her performance fell below the constitutional mandate as required by *Strickland* and *Krummacher* and the other cases on the subject. And therefore, although somewhat reluctantly because I feel trial counsel should have done a better job, I deny Petitioner's request for post-conviction relief and I will sign the judgment at this time."

Petitioner appeals. He contends that the post-conviction court erred in denying relief on his claim that trial counsel's failure to call Smith violated his state and federal constitutional rights to the adequate and effective assistance of counsel. The superintendent disagrees, arguing that the post-conviction court correctly denied relief.

## STANDARD OF REVIEW

We review the post-conviction court's denial of relief for legal error. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). In conducting that review, we are bound by the post-conviction court's findings of historical fact if those findings are supported by the evidence in the record. *Id.* "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Id.*

## ANALYSIS

Petitioner seeks post-conviction relief from his conviction for second-degree assault on the ground that the performance of his lawyer did not comport with the standards for performance of criminal defense counsel derived from Article I, section 11,[3] and the Sixth Amendment.[4] Under the Oregon Post-Conviction Relief Act, a petitioner who seeks

---

[3] Article I, section 11, states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel[.]"

[4] The Sixth Amendment states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

to invalidate a conviction on that ground bears the burden of proving that the alleged constitutional violation or violations occurred. ORS 138.620(2); *Pereida-Alba v. Coursey*, 356 Or 654, 662, 342 P3d 70 (2015). Therefore, to obtain post-conviction relief on the ground that his lawyer's performance did not comport with Article I, section 11, standards, petitioner was required to prove facts showing (1) that his counsel failed to exercise reasonable professional skill and judgment, and (2) that petitioner suffered prejudice as a result. *Pereida-Alba*, 356 Or at 662.[5]

In this case, although the post-conviction court's ruling is ambiguous in its assessment of the performance element of petitioner's claim, we understand the court to have determined that both elements of petitioner's claim failed, that is, that trial counsel did not perform deficiently and also that any deficiency in trial counsel's performance did not prejudice petitioner. For the reasons that follow, we conclude that the court erred in both respects.

As to the performance element of petitioner's claim, whether trial counsel's decision not to call Smith as a witness reflects an absence of reasonable professional skill and judgment turns on the facts known to counsel at the time that she made that decision. *Id.* We do not assess counsel's decisions with the benefit of hindsight but, instead, ask "whether those decisions reflected, at the time they were made, a reasonable exercise of professional skill and judgment." *Id.*; *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). Whether the facts proved by the petitioner demonstrate that a decision by trial counsel did not reflect the exercise of reasonable professional skill and judgment is a question of law for the court. *Perieda-Alba*, 356 Or at 663.

Here, the facts proved by petitioner about the circumstances known to counsel at the time that she opted not to call Smith lead to the conclusion that a lawyer exercising reasonable professional skill and judgment would have

---

[5] A similar standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment. Because we conclude that petitioner is entitled to relief on his claim under Article I, section 11, we do not address his Sixth Amendment claim.

made the decision to call Smith to testify. The transcript of petitioner's criminal trial indicates that trial counsel made the decision not to call Smith after she had presented the two defense witnesses, Carroll and Watkins. Accordingly, we examine what counsel knew at that time.

First, counsel knew that petitioner's only hope to avoid a conviction was to prevail on his claim of self-defense; petitioner did not dispute that he had hit Johnson. In view of the state's theory of the case, for the jury to reach petitioner's claim of self-defense, it was crucial that the jury first discredit Johnson's testimony that petitioner attacked him. If the jury believed Johnson, defendant had no chance of prevailing. Second, counsel knew that Smith could impeach Johnson with Johnson's own admissions that he was the initial aggressor in the fight; she knew what his testimony would be both from Watkins's trial and from her investigator's consultation with Smith. Third, counsel knew that Smith had presented well as a witness in Watkins's criminal trial, notwithstanding his criminal history and jail clothes. In other words, trial counsel had had the rare advantage of a preview of Smith's testimony, a preview that demonstrated that the risks associated with Smith's testimony, such as the fact that he had prior convictions, were minimal. Fourth, by the time that she made up her mind not to call Smith, counsel knew that the witnesses that she had called to contradict Johnson's version of events, Carroll and Watkins, had been impeached by their alignment with petitioner over Johnson and by their prior inconsistent statements. From that, counsel reasonably should have known that Smith's testimony could be essential to discredit Johnson. Fifth, counsel knew that Smith's relationship with petitioner, which was not close, was not the sort likely to lead to the same type of impeachment. Smith told trial counsel's investigator that he knew petitioner from jail and considered himself friends with petitioner while in jail but "on the outside" would never invite petitioner over to his house. For all those reasons, as the post-conviction court found, Smith's testimony would have been "helpful" to petitioner's case, if not crucial. A lawyer exercising reasonable professional skill and judgment, knowing what counsel knew at the time, would have called Smith to testify at petitioner's trial.

The remaining question is whether trial counsel's failure to call Smith prejudiced petitioner. In these circumstances—where petitioner is challenging a conviction that resulted from a trial—petitioner was prejudiced if trial counsel's deficient performance "could have tended to affect the outcome of the case." *Green*, 357 Or at 323, 323 n 13 (internal quotation marks and emphasis omitted). That standard requires a determination that there is "more than mere possibility, but less than probability" that counsel's inadequacy affected the outcome of the proceeding. *Id.* at 322.

We are persuaded that that standard is met here. Had trial counsel called Smith, the jury would have heard about Johnson's own admissions that he had initiated the fight, as well as his reasons for maintaining otherwise at trial: his need for financial assistance with his medical bills.[6] That impeachment evidence could have powerfully called into question Johnson's testimony that petitioner was the initial aggressor; without that evidence, however, there is a reasonable possibility that the jury simply credited Johnson's testimony, concluded that petitioner was the initial aggressor, and never even deliberated on petitioner's claim of self-defense. Certainly, the state urged the jury to do exactly that, and it is not unreasonable to think that that is the course the jury took, given that the state's impeachment of Carroll and Watkins undermined petitioner's primary evidence that he had not been the initial aggressor.

Smith's testimony also would have called into question the testimony of Johnson's nephew, that he had seen petitioner and Watkins kicking or hitting Johnson while he was on the ground, by supplying the jury with an explanation—the family's financial need—as to why Johnson and his nephew might be willing to testify to a version of events in which petitioner did more than punch Johnson three times.

Had such doubts been raised about the state's case through the introduction of Smith's testimony, there is more than a "mere possibility" that the jury would have viewed

---

[6] Petitioner introduced an affidavit from Smith in the post-conviction proceeding in which Smith averred that he would have testified in petitioner's trial the same way that he testified in Watkins's trial.

the evidence in a light more favorable to petitioner, considered that petitioner had not been the initial aggressor, reached petitioner's self-defense claim, and had doubts as to whether the state disproved it beyond a reasonable doubt. If the jury were to reject the version of the fight to which Johnson and his nephew testified, and to accept the version of events presented by the defense witnesses, the state's case against petitioner's claim of self-defense would have been significantly weaker than it was. Although Johnson's injuries were severe, if the jury believed petitioner's version of events that he punched Johnson only three times in response to Johnson's initial aggression, the jury reasonably could have had doubts that petitioner had used greater force than was reasonable under the circumstances and simply attributed the extent of Johnson's injuries to the fortuity that petitioner had some experience with mixed martial arts techniques, such that petitioner's three punches inflicted more harm than would have been inflicted by three punches thrown by someone without mixed martial arts experience. Because the omission of Smith's testimony diminished the likelihood of the jury crediting petitioner's version of events, a version of events that could have led to petitioner's acquittal, petitioner was prejudiced by trial counsel's decision not to call Smith to testify at his criminal trial.

Reversed and remanded with instructions to grant the petition for post-conviction relief.