Argued and submitted January 5, 2016; reversed and remanded as to claims of inadequate assistance regarding failure to meet with petitioner and failure to introduce bias emails, otherwise affirmed August 23, 2017

GEDDY LEE JOHNSON,
*Petitioner-Appellant,*

*v.*

Jeri TAYLOR,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV121039; A156818

403 P3d 427

Jon H. Weiner argued the cause and filed the brief for appellant.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Frederick M. Boss, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Before DeVore, Presiding Judge, and Garrett, Judge, and Flynn, Judge pro tempore.

**FLYNN, J. pro tempore**

Petitioner seeks post-conviction relief (PCR) from multiple convictions that arose out of two incidents of domestic violence against his girlfriend. He urges us to conclude that the PCR court erred by denying relief on two of his claims for inadequate assistance of counsel: (1) defense counsel's failure to introduce the content of email messages that the victim and petitioner exchanged that, petitioner contends, would have impeached the victim and demonstrated her "bias and motive to lie," and (2) defense counsel's failure to contact petitioner until the night before trial. Petitioner also urges us to conclude that the PCR court erred when it refused to consider records from the disciplinary office of the Oregon State Bar, which petitioner offered as evidence that defense counsel was regularly failing to exercise reasonable professional skill and judgment during the time that he was representing petitioner.

We reverse and remand for the PCR court to consider whether defense counsel made a considered choice to not introduce the bias emails and, if not, whether the absence of a considered choice amounted to constitutionally inadequate assistance or demonstrates that petitioner proved prejudice from counsel's failure to contact him in the months before trial. Moreover, we conclude that the disciplinary records are relevant to those determinations and are not inadmissible character evidence.

## I. BACKGROUND

A. *Petitioner's Criminal Trial*

Petitioner was arrested after his girlfriend called police in August 2009 to report that he had assaulted her. She later reported that petitioner had also assaulted her in January 2009. Based on those two incidents, petitioner was charged with multiple counts of assault constituting domestic violence, ORS 163.175; ORS 163.160, and one count of third-degree robbery, ORS 164.395.

At the criminal trial, petitioner's defense counsel argued to the jury that the victim had angrily forced a confrontation with petitioner in August, after he announced that

he was leaving, and that she then fabricated both assaults. Petitioner testified that he had not assaulted the victim on either occasion. He testified that he had tried to stay away from the victim and that the incident in August arose after he had announced, "I'm tired of you and I want out of here." He also testified that the August argument was precipitated in part by petitioner's refusal to deliver marijuana illegally at the victim's request.

The victim acknowledged that, when she went to the hospital after the January assault, she had reported that she slipped and injured herself without petitioner's involvement. She testified that she had not contemporaneously reported the incident to the authorities because she was worried that her son might be taken away. She also testified that she changed her phone number shortly after the January assault and did not have regular contact with petitioner until June 2009, when they resumed their relationship.

On cross-examination, petitioner's counsel showed the victim a stack of emails that she had exchanged with petitioner between January and June 2009, and she admitted that she had continued to have regular email contact with petitioner during that time. She insisted, however, that "it was only email" contact. The victim also acknowledged that she had not mentioned the January assault in any of the emails to petitioner and that, in some of the emails, petitioner had told the victim that he wanted her to leave him alone.

The jury found defendant guilty on all counts and also found multiple aggravating factors, on the basis of which the trial court imposed enhanced sentences. After his conviction was affirmed on direct appeal, petitioner filed this post-conviction action.

B. *Petitioner's PCR Trial*

As pertinent to the issues that he raises on appeal, petitioner alleged in his PCR petition that his defense counsel was inadequate and ineffective in failing "to introduce into evidence emails sent between petitioner and the alleged victim" that contradicted some of the victim's testimony and demonstrated bias and a motive to lie and in failing

"to contact petitioner for approximately four months immediately preceding trial."

In support of his allegation that defense counsel was inadequate in failing to introduce the emails, petitioner offered emails to show the information that he asserted counsel should have used at trial. They show that, during an exchange of emails in May 2009, petitioner and the victim made offensive slurs against one another and the victim made threats, including that she would "fuck the rest of [petitioner's] life up" and make him regret having met her. Defense counsel used the emails to impeach the victim's statement that she had not been in contact with petitioner from January to June 2009. However, counsel did not use the email evidence to show the victim's threats against petitioner. Neither petitioner nor the state[1] provided an affidavit from petitioner's defense counsel to explain why he did not introduce the content of the emails. The PCR court concluded that petitioner failed to prove that defense counsel performed inadequately with respect to his failure to introduce the emails.

In support of his allegation that defense counsel was inadequate in failing to contact petitioner prior to trial, petitioner submitted a declaration that he had made multiple attempts to contact his defense counsel by mail and telephone but that counsel met with him only twice: at arraignment and, four months later, at 9:00 p.m. the night before trial. The PCR court stated: "That is clearly not what any court would expect of a defense attorney[.]" However, the court concluded that petitioner failed to establish prejudice from counsel's unreasonable performance.

Finally, in support of his allegations generally, petitioner offered evidence that, approximately two weeks before petitioner's criminal trial began, the Oregon State Bar (the Bar) had filed a disciplinary complaint against defense counsel for neglecting an extensive list of clients and client matters and had filed a petition for counsel's immediate suspension. The evidence also showed that less than two

---

[1] To avoid confusion, we refer to the defendant in this post-conviction case, who is the superintendent of the correctional facility where petitioner is incarcerated, as "the state."

weeks after petitioner's criminal trial, the Bar sought and obtained an order of default based on defense counsel's failure to respond to the formal complaint and then, several months later, it obtained an order permanently disbarring petitioner's defense counsel. The PCR court ruled that the Bar records were inadmissible.[2]

## II. ANALYSIS

A petitioner is entitled to post-conviction relief when there has been a "substantial denial" of a federal or state constitutional right, "which denial rendered the conviction void." ORS 138.530(1)(a). Article I, section 11, of the Oregon Constitution, guarantees a criminal defendant "adequate performance by counsel concerning the functions of professional assistance which an accused person relies upon counsel to perform on his behalf."[3] *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (internal quotation marks omitted).

Our analysis of whether the PCR court erroneously denied relief on a claim of inadequate assistance under the Oregon Constitution ordinarily involves two inquiries:

> "'First, we must determine whether petitioner demonstrated by a preponderance of the evidence that [his or her counsel] failed to exercise reasonable professional skill and judgment. Second, if we conclude that petitioner met that burden, we further must determine whether he proved that counsel's failure had a tendency to affect the result of [his or her] trial.'"

---

[2] Petitioner alleged several other grounds for relief, including one on which the PCR court granted relief—the claim that petitioner's trial counsel was inadequate in failing to object to a sentencing error. None of the court's rulings on the other grounds for relief is at issue on appeal.

[3] Petitioner alleged that his counsel's failings constituted both inadequate assistance of counsel under Article I, section 11, and ineffective assistance of counsel, in violation of petitioner's rights under the Sixth Amendment to the United States Constitution. The Oregon Supreme Court has explained that, although the state and federal constitutional guarantees of the right to counsel "are 'worded differently,' they 'embody similar objectives.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting *Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981)). Petitioner does not assert that our analysis of counsel's performance differs under the applicable state and federal constitutional provisions, so—except as the specific context requires otherwise—we frame our discussion in terms of the Oregon constitutional standard. *See Montez v. Czerniak*, 355 Or 1, 31 n 10, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

*Montez,* 355 Or at 7 (quoting *Lichau v. Baldwin,* 333 Or 350, 359, 39 P3d 851 (2002) (internal citations omitted)). We are bound by the PCR court's findings of fact that are supported by evidence in the record. *Green v. Franke,* 357 Or 301, 312, 350 P3d 188 (2015).

With respect to the performance element of a PCR claim, we review as a matter of law whether the facts proved by petitioner demonstrate that defense counsel failed to exercise reasonable professional skill and judgment. *Cartrette v. Nooth,* 284 Or App 834, 841, 395 P3d 627 (2017) (citing *Pereida-Alba v. Coursey,* 356 Or 654, 663, 342 P3d 70 (2015)). With respect to whether defense counsel's failure may have had a tendency to affect the outcome, if the petitioner was convicted after a jury trial, "the tendency to affect the outcome standard demands more than mere possibility, but less than probability." *Green,* 357 Or at 322. In such cases, "the issue is whether trial counsel's acts or omissions '*could have tended to affect*' the outcome of the case." *Id.* at 323 (quoting *Lichau,* 333 Or at 365 (emphasis in *Green*)).

A.  *Emails Between Petitioner and the Victim*

We begin by considering petitioner's claim that defense counsel provided inadequate assistance because he failed to introduce the email content. Petitioner acknowledges that his defense counsel "did manage to use the content of the emails to elicit helpful admissions from the victim at trial." He contends, however, that his defense counsel was inadequate in failing "to take the next obvious step of introducing the emails into evidence to allow the jury to examine the emails during deliberations." According to petitioner, the content of the emails "would have provided graphic evidence of the victim's bias and motive to lie."

1.  *Probative value of the emails*

The "bias" emails were part of a longer chain of messages that petitioner and the victim exchanged on May 21, 2009. In one, the victim threatened, among other things, to inform the police that petitioner was growing marijuana and had stolen the victim's marijuana cuttings, and that petitioner had "24 hours [until I] fuck the rest of your life

up." In another, the victim threatened petitioner: "fuck you and fuck the rest of your life ... your [*sic*] going to regret meeting me even more than you do you fuckin faggit." In rejecting petitioner's claim regarding his counsel's use of the email, the post-conviction court explained that "the May emails don't show bias or motive to lie." Petitioner argues that the court's assessment of the emails is "inexplicable," and we agree. As petitioner contends, the emails show that the victim had threatened to "fuck the rest of [petitioner's] life up" when defendant angered her in May, which supports the defense theory that her anger at petitioner in August motivated her to falsely accuse petitioner of assault.[4]

### 2. *Disadvantages of introducing the emails*

The state emphasizes that a post-conviction court, in general, presumes that counsel "made all significant decisions in the exercise of reasonable professional judgment." *See Pereida-Alba*, 356 Or at 672 (quoting *Strickland v. Washington*, 466 US 668, 690, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (explaining that petitioners seeking post-conviction relief generally confront that presumption)). According to the state, the way in which petitioner's defense counsel used the emails reflects a reasonable tactical choice because much of the content was "unflattering to petitioner." Even if petitioner's counsel had introduced only the victim's email statements, the state argues, the unflattering content would have been admissible as context. *See* OEC 106 ("When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other[.]").

We agree with the state that reasonable defense counsel could conclude that the potential disadvantages of introducing the email content outweighed the advantages. Specifically, the email exchange on May 21 was initiated by

---

[4] Petitioner also contends that his defense counsel performed inadequately in failing to introduce emails that would have impeached the victim's claim on cross-examination that she had only been in email contact with petitioner. However, the PCR court found that "[it] was clear from the testimony that the two were seeing one another again and he was spending time at her house." We, thus, address only the argument that the email provided evidence of bias and a motive to lie.

a request from petitioner to purchase marijuana from the victim. While working out the details of that transaction, the victim mentioned that she was romantically involved with another person, to which petitioner responded, "[Y]ou fuckin make me sick, dumb fuckin cunt." The state argues that allowing the jury to see petitioner's inflammatory statement "would have undercut the defense theory that petitioner was the non-violent victim of an angry scorned lover." Admission of that May 21 email exchange also would have shown the jury that petitioner initiated the email contact on that occasion, which could have cast doubt on his testimony that he was avoiding contact with the victim. Moreover, the email exchange showed that defendant initiated the contact with a request to purchase marijuana, which could have reflected negatively on petitioner's credibility, because he claimed that the August argument was precipitated in part by his refusal to illegally deliver marijuana.

### 3. *Assessing counsel's performance*

It is not clear how great of a risk the jury hearing the "unflattering content" may have posed for petitioner's case, given that the PCR court described it as "clear from the testimony that the two were seeing one another again and he was spending time at her house," and given that the jury was allowed to hear that petitioner had prior convictions for assault in the fourth degree, "domestic strangulation," and "domestic menacing" in a 2008 incident involving the victim and that he had prior felony convictions for delivery of a controlled substance. Nevertheless, even if the unflattering content was merely cumulative, we conclude that reasonable counsel could decide that the cost-benefit analysis weighed against introducing the email content.

In this case, however, our conclusion that reasonable counsel could choose not to introduce the bias emails does not end the inquiry. Petitioner contends that counsel's omission with regard to the emails was the product of a failure to investigate the available evidence, and not of a choice made through the exercise of reasonable professional skill and judgment. As the Supreme Court has explained, "'the absence of strategic thought or direction on the part

of a defense team' can constitute inadequate assistance," although it does not "automatically constitute inadequate assistance." *Pereida-Alba*, 356 Or at 674 (quoting *Montez*, 355 Or at 27-28). When a petitioner proves that a defense counsel's omission was not the product of a considered choice, "the question whether petitioner's counsel provided constitutionally adequate assistance becomes slightly more complex." *Id.* at 673-74. In those circumstances,

> "whether the failure to consider an issue constitutes inadequate assistance will turn on, among other things, whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense counsel failed to consider and the strategy that counsel did pursue, and the extent to which counsel should have been aware of the strategy that petitioner now identifies."

*Id.* at 674 (citing *Montez*, 355 Or at 24).

In *Pereida-Alba*, the petitioner argued that his defense counsel had performed inadequately because he had failed to request a jury instruction on a lesser-included offense. *Id.* at 671. The PCR court resolved the claim of inadequate assistance without deciding if defense counsel made a conscious choice not to request the instruction, because the court concluded that no reasonable counsel would fail to request the instruction. *Id.* The Supreme Court disagreed with the PCR court's conclusion that no reasonable defense counsel would have chosen to forgo the instruction, but concluded that it should remand for the PCR court to address the "remaining question" of whether the petitioner's defense counsel "made a conscious choice to forgo asking for the instruction." *Id.* at 670.

The court concluded that it should remand for that finding, because the circumstantial evidence would permit the PCR court to infer that the petitioner's defense counsel made no conscious choice, and thus to find that the petitioner overcame the presumption that his counsel made the decision in the exercise of reasonable professional skill and judgment. *Id.* at 671-72. The court added that, if the PCR court on remand found that the petitioner proved that his counsel failed to consider asking for the jury instruction,

then the PCR court would "have to decide whether that failure constituted inadequate assistance based on the reason for that failure, considered in light of the strategy that the court finds petitioner's counsel did pursue." *Id.* at 674.

The Supreme Court reached a similar conclusion in *Green v. Franke*, in which the petitioner contended that his defense counsel had provided inadequate representation in failing to seek a limiting instruction. *See Green*, 357 Or at 320. As in *Pereida-Alba*, the court concluded that the record would permit an inference that the petitioner's defense counsel failed to consider requesting a limiting instruction but that "neither the post-conviction court nor the Court of Appeals had the benefit of this court's decision in *Pereida-Alba* in considering the adequacy of counsel's performance in this case." *Id.* As a result of those and other circumstances, the court concluded "that the proper course of action" was to remand the claim to the PCR court "for further consideration in light of" *Pereida-Alba. Id.*

Similar considerations suggest that remand is the proper course of action in this case. First, as in *Pereida-Alba* and *Green*, the record would permit an inference that petitioner's defense counsel failed to consider introducing the content of emails. Given the evidence that counsel failed to meet with petitioner until the night before trial, the failure to offer statements that seemingly provided strong support for petitioner's theory of defense, and the lack of any direct, affirmative evidence regarding defense counsel's mental process, the PCR court could find that the petitioner has overcome the presumption that his defense counsel exercised reasonable professional skill and judgment in his use of the emails.

Second, some of the factors that *Pereida-Alba* identifies as significant appear to turn in petitioner's favor. The evidence of the victim's threats when she became angered in May supports the central premise of petitioner's defense case, and reasonably competent counsel would have been aware of the content of those emails and recognized their potential value to proving the defense case.

Third, although petitioner argued below that his defense counsel did not engage in "some kind of decision

making" when he failed to present the "graphic evidence of bias and motive," the PCR court lacked the benefit of *Pereida-Alba* and appears to have resolved petitioner's email claim without deciding whether defense counsel made a strategic choice to not introduce the emails. Instead, the court concluded that the emails do not demonstrate bias or a motive to lie—a conclusion that we do not share.

We do not suggest that those circumstances require remand in every case. Ultimately, whether the facts "demonstrate that a decision by trial counsel did not reflect the exercise of reasonable professional skill and judgment is a question of law for the court." *Cartrette*, 284 Or App at 841 (citing *Pereida-Alba*, 356 Or at 663). Thus, there would be no reason to remand if we could conclude that, even assuming a failure to consider the choice at issue, defense counsel provided adequate representation.

Indeed, we employed similar reasoning in *Farmer v. Premo*, 283 Or App 731, 390 P3d 1054 (2017), in which we considered the effect of a finding by the PCR court that defense counsel had failed to consider taking the action that the petitioner contended adequate counsel would have taken. *Id.* at 766-67. We concluded that, under the standard that *Pereida-Alba* describes, the finding would not lead to the legal conclusion that the failure to make a strategic choice constituted inadequate assistance. *Id.* From the record on appeal, we were able to determine that the strategy the petitioner believed his counsel should have pursued—seeking a continuance in order to present a live witness at a new-trial hearing that was subject to strict time constraints—"reasonably could have been viewed as a risky course of action" and would have prevented the petitioner's counsel from taking the objectively reasonable course of action that the petitioner's counsel did pursue and for which we had identified "many advantages."[5] *Id.* at 767. Under the circumstances

[5] As we explained in *Farmer*, the petitioner's trial counsel had acknowledged to the trial court the 20-day timeline set out in ORS 136.535(3) (2001), which provided that new-trial motions "shall conclusively be considered denied" if not determined "within 20 days after the time of the entry of the judgment." 283 Or App at 761. Indeed, the new-trial hearing in that case—as conducted *without* a continuance having been requested—appears to have occurred more than 20 days after entry of the judgment, although the court and counsel appear to have believed it was within the time limitation. *Id.* at 761 n 17. In addition, as

at the time, including legal and tactical considerations, the course of action that the petitioner's counsel did take would reasonably have led her away from considering a continuance—a risky alternative course of action that was incompatible with the course that she was pursuing. Thus, we were able to conclude that, "[i]n those circumstances," even if the petitioner's counsel inadvertently failed to consider a continuance, that failure did "not represent a suspension of professional skill and judgment," and would not establish that she had provided inadequate representation. *Id.*

Here, if the PCR court were to find that petitioner has met his burden to prove that his defense counsel's failure to introduce the emails was not the product of a strategic decision, the record, unlike in *Farmer*, does not resolve numerous factual inquiries that would be pertinent to our assessment of whether the failure to make a strategic choice constitutes inadequate assistance under the standard that *Pereida-Alba* describes. Those potentially relevant factual inquiries include the extent to which counsel's failure to introduce the emails was a product of a failure to prepare generally, whether the email threats provided the only evidence to support the defense premise that the victim's anger at petitioner was a sufficient motive to falsely accuse him of assault, how harmful the "unflattering" email content may have been in light of other similar evidence that the state presented to the jury, and whether an attorney familiar with the email content could have introduced it in a way that minimized the risk of harm from the unflattering content.

We also emphasize that remand would be unnecessary if, as the state contends, petitioner failed to prove prejudice from the challenged omission, regardless of whether the omission represents the absence of strategic thought. *See Green*, 357 Or at 321 (explaining that, if the court were to agree with the state's argument that the petitioner suffered no prejudice from counsel's omission, "it would obviate the need for a remand"). The PCR court's statement that the emails did not demonstrate bias may reflect a conclusion that petitioner suffered no prejudice from his defense

---

discussed in *Farmer*, a continuance would have allowed the state to also present new live-witness testimony.

counsel's failure to admit the emails. However, we have rejected that view of the email threats. Other factual considerations that may be pertinent to the prejudice inquiry include some of the same considerations that we have identified above as pertinent to the performance inquiry—the significance of this evidence to the defense case and the risk to petitioner's case from the unflattering aspects of the emails. Given the potential significance of the email threats to proving petitioner's theory of defense, we are unable to conclude from the existing findings whether petitioner proved that his defense counsel's omission "'could have tended to affect' the outcome of the case." *See id.* at 323 (quoting *Lichau*, 333 Or at 365 (emphasis omitted)). As the Supreme Court explained in *Green*, "[i]n light of those circumstances, we conclude that the proper course of action" is to reverse the PCR court's decision regarding the email claim and remand that claim for further consideration in light of *Pereida-Alba*. *See Green*, 357 Or at 320.

## B. *Trial Counsel's Neglect of Petitioner*

Petitioner also contends that the PCR court erred in rejecting his claim that he received inadequate assistance of counsel due to defense counsel's failure "to contact petitioner for approximately four months immediately preceding trial, finally meeting with him in jail at about 9 pm on the eve of trial." On appeal, the state does not dispute that counsel's failure to meet with petitioner was clearly deficient performance, and the PCR court held that counsel's omission "is clearly not what any court would expect of a defense attorney." However, the court concluded that petitioner failed to establish prejudice, so that ruling is the focus of our inquiry. We conclude that our decision to remand for further consideration of the email claim makes remand the proper course of action as to the failure-to-meet claim as well.

### 1. *The doctrine of "presumed prejudice"*

As an initial matter, we consider but reject petitioner's argument that this court should presume prejudice "[i]n a case of this magnitude, against this systematic denial of petitioner's ability to confer with trial counsel[.]" The doctrine of "presumed prejudice"—referred to as "structural

error" in more recent cases—"has not been adopted * * * as an aspect of Oregon law." *Ryan v. Palmateer*, 338 Or 278, 295, 297 n 9, 108 P3d 1127, *cert den*, 546 US 874 (2005); *see also Simonsen v. Premo*, 267 Or App 649, 659 n 5, 341 P3d 817 (2014), *rev den*, 357 Or 324 (2015) ("Oregon has not adopted the doctrines of structural error and presumed prejudice.").

The doctrine is also inapplicable to petitioner's claim of ineffective assistance under the Sixth Amendment. The federal cases applying the doctrine "sharply distinguish between trials in which the defendant was denied the right to counsel, either actually or constructively, and cases in which the defendant received the assistance of counsel, but that counsel was ineffective." *Ryan*, 338 Or at 298. As the court summarized in *Ryan*, "[a] defendant who chooses to assert a Sixth Amendment ineffective assistance of counsel claim without proving prejudice must demonstrate that trial counsel's errors were so egregious as to amount to a constructive denial of counsel." *Id.* at 299. Although we join in the trial court's admonition that ignoring a client until the eve of trial is "clearly not what any court would expect of a defense attorney," petitioner has not persuaded us that counsel's omission, in this case, amounted to the "constructive denial of counsel."

### 2. *Evidence of actual prejudice*

Apart from the limited doctrine of structural error, a petitioner seeking to prove inadequate assistance of counsel must prove "that counsel's failure had a tendency to affect the result of his trial." *Montez*, 355 Or at 7 (internal quotation marks omitted). As we have explained above, in the context of petitioner's claim that counsel's performance affected the outcome of his jury trial, "the issue is whether trial counsel's acts or omissions '*could have tended to affect*' the outcome of the case." *Green*, 357 Or at 323 (quoting *Lichau*, 333 Or at 365 (emphasis in *Green*)). Among other arguments, petitioner contends that his defense counsel's failure to contact him prior to trial could have tended to affect the outcome because it contributed to counsel's failure to appreciate the significance of—and to introduce into evidence—the emails that petitioner and the victim exchanged during the period between the attacks. Given our conclusion

that it is appropriate to remand for the PCR court to consider precisely that question—whether defense counsel failed to consider the significance of introducing the emails—the two claims are linked in a way that makes it appropriate to remand for the PCR court also to consider whether petitioner suffered prejudice from counsel's failure to meet with petitioner before trial.

## C. Admissibility of Bar Disciplinary Records

Finally, we address petitioner's challenge to the PCR court's exclusion of the Bar disciplinary records, because it is pertinent to the inquiry on remand. Those records show that, in the months between petitioner's arraignment and criminal trial, the Bar advised petitioner's defense counsel that it was investigating numerous complaints against him for neglecting the cases of clients that he represented in bankruptcy matters, criminal law matters and family law matters, and that defense counsel repeatedly ignored requests from Bar disciplinary counsel for explanations and ignored a subpoena for documents.

On three separate occasions during those months, the State Professional Responsibility Board (SPRB) found probable cause to charge defense counsel with violations of the Rules of Professional Conduct (RPC), including repeated instances of neglecting a legal matter entrusted to him, RPC 1.3. Several of those legal matters included representation of other clients during the time counsel represented petitioner. The charges were consolidated into a formal complaint that the Bar filed two weeks before petitioner's criminal trial. The records show that defense counsel failed to respond to the disciplinary complaint, leading to an order of default, entered two weeks after petitioner's criminal trial, that deemed the facts alleged in the formal complaint to be true.

At the same time that it filed the formal complaint, the SPRB submitted a petition seeking defense counsel's immediate suspension from the practice of law. The petition was accompanied by an affidavit from assistant Bar disciplinary counsel, averring that the Bar was investigating multiple additional complaints against defense counsel and

that defense counsel's continuing practice "will, or is likely to, result in substantial harm to his clients, the public at large, and the profession."

The PCR court appears to have concluded that the records were both irrelevant and inadmissible under OEC 404:[6]

"The fact that [counsel] was negligent in other matters does not prove that he was negligent here. It is improper character evidence. The bar's disciplinary actions don't *per se* establish inadequacy here."

Petitioner challenges both aspects of that ruling. We conclude that the records are relevant to the question of inadequacy, even if they do not "*per se* establish inadequacy." We also conclude that the records were offered for a purpose that is permitted by OEC 404.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. As the Supreme Court has emphasized, the rule establishes a "very low threshold for the admission of evidence, that is, evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Davis*, 336 Or 19, 25, 77 P3d 1111 (2003) (internal quotation marks omitted). Petitioner argues that the Bar records are evidence that defense counsel's "practice was spinning wildly out of control" during the time frame in which he represented petitioner and that this tends to show that defense counsel's omissions at trial were the product of "the out-of-control status of his practice—rather than the product of the reasonable exercise of professional skill and judgment." We agree.

As we have explained above, the primary question for the PCR court on remand is whether petitioner has overcome

_____

[6] OEC 404(2) provides that, subject to exceptions, "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]"

OEC 404(3) provides, also subject to exceptions, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

the presumption that his counsel's use of the emails reflects a decision made through "'the exercise of reasonable professional judgment.'" *See Pereida-Alba,* 356 Or at 672 (quoting *Strickland,* 466 US at 690). The Bar records are relevant to that inquiry in at least two ways. First, as petitioner argued to the PCR court, the records show "the grave danger" to defense counsel's license to practice law. The ongoing Bar proceedings are relevant as evidence of a major source of stress and distraction for defense counsel, from which the PCR court could infer that his omissions were the product of distraction, inattention or a lack of preparation, rather than the exercise of reasonable professional judgment.

Second, the evidence of counsel's persistent neglect of legal matters during the period that counsel was representing petitioner is evidence that counsel was suffering from a deteriorated mental state and general impairment of the ability to engage in strategic thought. Evidence of that mental state is, in turn, probative of whether counsel's limited use of the emails was the product of a considered, strategic decision or, instead, was the product of a lack of attention and strategic thought. That purpose for admitting the evidence is similar to the purpose that the Supreme Court identified in *State v. Lewis,* 352 Or 626, 290 P3d 288 (2012), for admitting evidence that the defendant had been driving poorly in the 15 minutes prior to a collision.

In *Lewis,* the defendant's state of mind at the time that he caused the collision was a key issue in his prosecution for negligent homicide. The court explained that the other instances of the defendant's poor driving were relevant, because they were evidence of a "persistent failure to pay attention to his driving and thus to his distracted and inattentive state of mind," including at the time of the collision. *Id.* at 635. Here, too, the inquiry on remand is an inquiry into counsel's state of mind—an inquiry into whether defense counsel engaged in the considered thought necessary to make his use of the emails a reasonable strategic choice. As in *Lewis,* evidence that during the pertinent time frame defense counsel was persistently neglecting legal matters—both in his contemporaneous representation of other clients and in his failure to respond to Bar inquiries—is relevant

to the question on remand. Those repeated instances of neglect are evidence of an impaired mental state, including during his representation of petitioner, which makes it more probable that he failed to introduce the emails due to that impaired state of mind, rather than due to a strategic choice.

Petitioner contends that the Bar records are admissible for a permitted non-character purpose under OEC 404(3). That rule provides that evidence of other wrongs or acts "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but may "be admissible for other purposes." Those permitted "other purposes" include purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

We agree that the Bar records may satisfy one of the permitted "other purposes" under OEC 404(3), because they are evidence that petitioner's counsel was engaged in an ongoing course of conduct that could suggest a mental state of diminished ability to exercise professional judgment or significant distraction from the task of representing petitioner. As discussed, in this case, the evidence was relevant to the question of whether counsel exercised reasonable professional skill and judgment in his use of the emails, which turns on whether the specific actions taken by defense counsel were the product of strategic consideration. Evidence of counsel's level of functioning in other contemporaneous situations requiring the same type of strategic consideration is relevant to that inquiry. Thus, on remand, the PCR court should admit and consider the evidence to the extent that it is offered to prove why counsel did not introduce the email evidence.[7]

Reversed and remanded as to claims of inadequate assistance regarding failure to meet with petitioner and failure to introduce bias emails; otherwise affirmed.

---

[7] Petitioner does not contend that an error in excluding the disciplinary evidence had some likelihood of affecting the PCR court's rulings on petitioner's other allegations of inadequate assistance, and we do not undertake that inquiry unilaterally.