TOOKEY, J.
*125 *60 Petitioner appeals a post-conviction court's judgment denying him relief from his convictions of first-degree rape, ORS 163.375, and first-degree sexual abuse, ORS 163.427. Petitioner sought post-conviction relief, contending that his trial counsel's failure to ensure that the jury was correctly instructed on his affirmative defense deprived him of his right to adequate and effective assistance of counsel guaranteed by Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. The post-conviction court denied relief, concluding that, although petitioner's trial counsel was constitutionally inadequate, that inadequacy did not prejudice petitioner. For the reasons that follow, we affirm.
BACKGROUND
At petitioner's criminal trial, the state adduced the following evidence. Petitioner and the victim shared an apartment with their respective children and another adult, Aguilar. On the evening of the events giving rise to petitioner's convictions, the victim's children and petitioner's child were not in the apartment that they shared. Following a night out with her friends, the victim, who had been drinking, called her roommate Aguilar around 3:00 or 4:00 a.m. and asked for Aguilar's help getting into the apartment from the complex's parking lot. Aguilar helped the victim into the apartment, where the victim-fully clothed-immediately fell asleep on top of her bed. Subsequently, Aguilar went to sleep on her bed, which was adjacent to the victim's bed.
At approximately 4:00 a.m., Aguilar woke up and heard the victim moaning. Aguilar saw that petitioner was on top of the victim. Petitioner left the room a few minutes later. Aguilar became upset that the victim and petitioner had had sex while she was in the room. Aguilar asked the victim whether she was going to work, which began at 6:00 a.m. When the victim did not respond, Aguilar attempted to wake the victim by shaking her. After a few minutes, the victim awoke and Aguilar asked why petitioner had been in the bedroom and on top of the victim. The victim was unsure of what Aguilar was talking about, and then the victim realized that her body was exposed and she "felt as if *61 [she] * * * had had relations." At that point, the victim called the police, and when the police arrived, she told them that she had been raped. Following a medical examination, DNA found in the victim's cervix and vagina matched petitioner's DNA.
In his defense at trial, petitioner contended that, although the victim was intoxicated, she had not been physically helpless when they had had consensual sex. Petitioner testified that he had been asleep when the victim came to his room, called his name, and invited him to follow her to her bedroom, and that, petitioner had then followed the victim into her bedroom where he and the victim had sex. Petitioner testified that the victim did not give him any indication that she did not consent.
Consistent with that theory of defense, in his closing argument, petitioner's trial counsel argued:
"The Court's going to read an instruction to you that talks about an affirmative defense. And that is that [petitioner] didn't know that [the victim] was asleep, didn't know that she was not really with it, not tracking, not there; didn't know. * * *.
"* * * * *
"The evidence doesn't establish guilt beyond a reasonable doubt, doesn't establish that he had any knowledge that [the victim] was incapable of giving consent, especially when to his mind and to his understanding and experience of that moment she was initiating it, she was participating in it. She just wasn't talking. She didn't say anything except to groan and push him away."
The trial court then orally instructed the jury, in pertinent part, as follows:
"A person is considered not capable of consenting to a sexual act if that person is physically helpless. Physically helpless; a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act. In any prosecution for a sexual offense in which the victim's lack of consent is based solely on the victim's incapacity to consent because the victim *126 is physically helpless, it is an affirmative defense for [petitioner] to prove that at the time of the alleged offense [petitioner] did not know of *62 the facts or condition responsible for the victim's incapacity to consent.
"[Petitioner] has raised the affirmative defense ignorance or mistake to the charge of rape in the first degree and sexual abuse in the first degree. If [petitioner] proves this affirmative defense, then [petitioner] is not guilty of the charge of rape in the first degree and sexual abuse in the first degree. To establish the affirmative defense ignorance or mistake [petitioner] must prove by a preponderance of the evidence the following:
"Preponderance of the evidence means the greater weight of the evidence. It is such evidence that when weighed with that opposed to it has more convincing force and is more probably true or accurate."
Petitioner's trial counsel did not object or take exception to the trial court's oral instructions. A jury convicted petitioner of first-degree rape and first-degree sexual abuse.
Subsequently, petitioner's trial counsel moved for a new trial, contending, among other points, that the court had read the jury an "incomplete instruction" on petitioner's affirmative defense. Petitioner's trial counsel averred that he had submitted jury instructions relating to his defense, but that the court had omitted part of the requested instruction. The requested instruction stated:
"[Petitioner] has raised the affirmative defense of ignorance or mistake to the charges of Rape in the First Degree and Sexual Abuse in the First Degree. If [petitioner] proves this affirmative defense, then [petitioner] is not guilty of the charges of Rape in the First Degree and Sexual Abuse in the First Degree.
"To establish the affirmative defense of Ignorance or Mistake, [petitioner] must prove by a preponderance of the evidence that, at the time of the alleged offenses, [petitioner] did not know of the facts or conditions responsible for the victim's incapacity to consent."
The trial court denied petitioner's motion for a new trial, explaining that "[t]he error was harmless" because it had "read the instruction given to it by the defense attorney, the jury was given the correct instruction in writing, [and] the *63 jury was informed that the burden[ ] w[as] on the state to prove all of the elements beyond a reasonable doubt[.]"
Petitioner appealed his judgment of conviction. We affirmed petitioner's convictions without opinion, and the Oregon Supreme Court denied review. State v. Nemecek , 251 Or. App. 302, 286 P.3d 1245, rev. den. , 353 Or. 127, 295 P.3d 640 (2012). Petitioner then filed a petition for post-conviction relief, alleging several grounds for relief, including the one that is the focus of this appeal-viz ., that his trial counsel was inadequate and ineffective for failing "to ensure that the jury was correctly instructed on the law." The post-conviction court determined that petitioner's trial counsel had been inadequate for failing to object to the trial court's mistake in reading the affirmative defense instruction. However, the post-conviction court denied relief, concluding that petitioner had not suffered prejudice because the oral instruction had contained the elements of the affirmative defense along with the definition of preponderance of the evidence.
On appeal, petitioner contends that the post-conviction court erred in denying him relief on the ground that his "trial counsel was constitutionally inadequate and ineffective because he failed to ensure that the jury was correctly instructed on the law." According to petitioner, the court erred in concluding that he was not prejudiced by his trial counsel's inadequacy. In response, defendant, the superintendent of the Eastern Oregon Correctional Institution, contends that the post-conviction court did not err in concluding that petitioner was not prejudiced by his trial counsel's inadequacy. The superintendent argues that the trial court's oral instructions "fairly communicated to the jury the elements of [petitioner's affirmative] defense and [petitioner's] burden to prove it by a preponderance of the evidence."
*127 STANDARD OF REVIEW
"We review the post-conviction court's denial of relief for legal error. In conducting that review, we are bound by the post-conviction court's findings of historical fact if those findings are supported by the evidence in the record. If the post-conviction court failed to make findings of fact on all the issues-and there is evidence from which such facts *64 could be decided more than one way-we will presume that the facts were decided consistently with the post-conviction court's conclusions of law."
Everett v. Premo , 279 Or. App. 470, 477-78, 380 P.3d 1099 (2016) (internal quotation marks and citations omitted).
ANALYSIS
"A petitioner is entitled to post-conviction relief when there has been a 'substantial denial' of a federal or state constitutional right, 'which rendered the conviction void.' " Johnson v. Taylor , 287 Or. App. 424, 429, 403 P.3d 427 (2017) (quoting ORS 138.530(1)(a) ). Both the Oregon and United States constitutions guarantee the right to "adequate performance by counsel concerning the functions of professional assistance which an accused person relies upon counsel to perform on his behalf." Montez v. Czerniak , 355 Or. 1, 6, 322 P.3d 487, adh'd to as modified on recons. , 355 Or. 598, 330 P.3d 595 (2014) (internal quotation marks omitted).[1]
To obtain post-conviction relief on the grounds that his trial counsel rendered inadequate assistance in violation of Article I, section 11, petitioner was required to prove "(1) a performance element: that trial counsel failed to exercise reasonable professional skill and judgment; and (2) a prejudice element: that petitioner suffered prejudice as a result of counsel's inadequacy." Owen v. Taylor , 287 Or. App. 639, 650-51, 404 P.3d 1021 (2017) (internal quotation marks omitted). In determining whether petitioner was prejudiced, "the issue is whether trial counsel's acts or omissions could *65 have tended to affect the outcome of the case." Johnson , 287 Or. App. at 430, 403 P.3d 427 (internal quotation marks and emphasis omitted).
We assume, without deciding, that petitioner and the post-conviction court are correct that petitioner's trial counsel failed to exercise reasonable professional skill and judgment by failing to take exception to the trial court's oral instruction related to defendant's affirmative defense. We turn to the second-and, in this case, dispositive-prong in our analysis to determine whether trial counsel's "acts or omissions could have tended to affect the outcome of the case." Id ."That standard requires a determination that there is more than mere possibility, but less than probability that counsel's inadequacy affected the outcome of the proceeding." Everett , 279 Or. App. at 479, 380 P.3d 1099 (internal quotation marks omitted).
Here, petitioner argues that he was prejudiced because (1) the jury was not correctly instructed on his affirmative defense; (2) the jury never received written instructions on his affirmative defense; (3) the affirmative defense was fundamental to his defense; and (4) trial counsel's failure to object or take exception to the jury instructions resulted in petitioner's appellate counsel raising the error under the plain error doctrine. The superintendent maintains that petitioner was not prejudiced by his trial counsel's *128 deficient performance, because the jury instructions that the trial court had provided "communicated to the jury the elements of [petitioner's affirmative] defense and [petitioner's] burden to prove it by a preponderance of the evidence." That is, according to the superintendent, any defect in the trial court's oral instruction "did not deprive the jury of a clear understanding of [petitioner's] defense and the nature of [petitioner's] burden to prove it."
We conclude that petitioner was not prejudiced by trial counsel's failure to object or take exception to the trial court's oral jury instruction. "Whether a petitioner has demonstrated prejudice is a question of law that, in turn, may depend on predicate findings of fact." Hayward v. Belleque , 248 Or. App. 141, 148, 273 P.3d 926 (2012), rev. den. , 353 Or. 208, 297 P.3d 480, cert. den. , 571 U.S. 845, 134 S.Ct. 101, 187 L.Ed.2d 75 (2013).
*66 We begin with petitioner's argument that the jury never received written instructions on his affirmative defense. As noted, "[i]f the post-conviction court failed to make findings of fact on all the issues-and there is evidence from which such facts could be decided more than one way-we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." Everett , 279 Or. App. at 477-78, 380 P.3d 1099. The post-conviction court did not make an express finding of fact on that issue, but there is evidence in the record to support a finding that the jury received petitioner's written instruction relating to his affirmative defense.
Before the post-conviction court, there was a factual dispute regarding whether trial counsel had submitted the written jury instructions that apply to his affirmative defense. Cf. Id . at 479-80, 380 P.3d 1099 (rejecting the superintendent's argument that the jury "may have received" the appropriate instruction in written form as an alternative ground for affirmance as the argument was not raised below and it was possible "the record would have developed differently, and would have included evidence as to what written instructions were, in fact, provided to the jury"). In this case, trial counsel submitted an affidavit to the post-conviction court stating that he "did submit appropriate jury instructions to the court in advance of petitioner's trial," including "an appropriate instruction reciting the affirmative defense of Ignorance or Mistake." Under our standard of review, we presume that the post-conviction court credited that assertion and further found that the trial court had given that instruction to the jury in writing. When the jury was instructed orally, the record shows that that instruction was among the others given, as demonstrated by the fact that the trial court read much of its contents to the jury. Additionally, the trial court, in its order denying petitioner's motion for a new trial, found that "the jury was given the correct instruction in writing." Thus, because the post-conviction court concluded that petitioner was not prejudiced by the oral jury instructions, we presume that it found, as the trial court did, that the jury had received an appropriate instruction in writing regarding petitioner's affirmative defense. Accordingly, we reject petitioner's argument that he was prejudiced because the *67 jury never received written instructions regarding his affirmative defense.
Additionally, as detailed above, the trial court orally instructed the jury as follows:
"In any prosecution for a sexual offense in which the victim's lack of consent is based solely on the victim's incapacity to consent because the victim is physically helpless, it is an affirmative defense for [petitioner] to prove that at the time of the alleged offense [petitioner] did not know of the facts or condition responsible for the victim's incapacity to consent.
"[Petitioner] has raised the affirmative defense ignorance or mistake to the charge of rape in the first degree and sexual abuse in the first degree. If [petitioner] proves this affirmative defense, then [petitioner] is not guilty of the charge of rape in the first degree and sexual abuse in the first degree. To establish the affirmative defense ignorance or mistake [petitioner] must prove by a preponderance of the evidence the following:
"Preponderance of the evidence means the greater weight of the evidence. It is such evidence that when weighed with that *129 opposed to it has more convincing force and is more probably true or accurate. * * *."
Based on those oral instructions, the post-conviction court found that the trial court had provided the jury with the elements of petitioner's affirmative defense, explained that it was petitioner's burden of proving that defense by a preponderance of the evidence, and defined preponderance of the evidence. Although the trial court neglected to repeat the elements of the affirmative defense after explaining petitioner's burden of proof, the post-conviction court concluded that that instruction is "somewhat redundant," that the jury was nonetheless instructed "to an adequate amount and degree," and that petitioner did not "suffer[ ] prejudice."
We agree with the post-conviction court. In his closing argument, petitioner's trial counsel alerted the jury about the nature of his affirmative defense, stating, "[t]he Court's going to read an instruction to you that talks about an affirmative defense. And that is that [petitioner] didn't know that [the victim] was asleep, didn't know that she *68 was not really with it, not tracking, not there; didn't know." Subsequently, the trial court orally instructed the jury and omitted repeating the elements of petitioner's affirmative defense after explaining petitioner's burden of proof. However, viewing the instructions as a whole, we conclude that the jury was adequately instructed on all of the elements of petitioner's affirmative defense. The trial court's instruction provided the jury with the elements of the affirmative defense prior to explaining to the jury that petitioner was asserting that defense and explaining the burden of proof. Although the trial court did not repeat the elements of the affirmative defense after it explained petitioner's burden of proof, the instructions as a whole adequately informed the jury about petitioner's affirmative defense and his burden of proof to establish that defense. See Everett , 279 Or. App. at 481-82, 380 P.3d 1099 ("viewing the instructions as a whole" to determine whether the petitioner was prejudiced by trial counsel's failure to prevent or remedy the trial court's incorrect jury instruction).
CONCLUSION
In sum, this is not a case in which the jury never received an instruction on the elements of petitioner's affirmative defense. See id . (concluding that the petitioner was prejudiced by trial counsel's failure to ensure that the jury was instructed that the requisite mental state for attempted second-degree assault is intentional). Here, there is evidence in the record that supports a finding that the jury received petitioner's written instruction relating to his affirmative defense. Additionally, given that petitioner's trial counsel introduced the affirmative defense to the jury and the trial court orally delivered the substance of petitioner's requested jury instruction (albeit not in petitioner's requested form) we cannot say that there is more than a mere possibility that his counsel's failure to except to the jury instruction as read by the court affected the outcome of the case. For those reasons, we conclude that petitioner failed to prove that his trial counsel's performance had a tendency to affect the outcome of the proceeding.
Affirmed.

Although "worded differently," the Sixth Amendment and Article I, section 11, "embody similar objectives." Green v. Franke , 357 Or. 301, 311, 350 P.3d 188 (2015) (internal quotation marks omitted). To establish an ineffective assistance claim under the Sixth Amendment, "petitioner was required to demonstrate that trial counsel's performance fell below an objective standard of reasonableness and also that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Owen v. Taylor , 287 Or. App. 639, 651, 404 P.3d 1021 (2017) (internal quotation marks omitted). We reject petitioner's unpreserved argument under the Sixth Amendment "that prejudice should be presumed under the circumstances of this case." Petitioner does not request plain error review, and we therefore decline to undertake that analysis. State v. Clarke , 279 Or. App. 373, 391, 379 P.3d 674 (2016). Because petitioner does not otherwise "assert that our analysis of counsel's performance differs under the applicable state and federal constitutional provisions * * * we frame our discussion in terms of the Oregon constitutional standard." Johnson , 287 Or. App. at 429 n. 3, 403 P.3d 427.